**TEXACO, INC., et al., Plaintiffs,**

v.

**DEPARTMENT OF ENERGY et al., Defendants.**

**CLARK OIL AND REFINING CO. et al., Plaintiffs,**

v.

**DEPARTMENT OF ENERGY et al., Defendants.**

**INDEPENDENT REFINERS ASSOCIATION OF AMERICA, Plaintiff,**

v.

**DEPARTMENT OF ENERGY et al., Defendants.**

Civ. A. Nos. 78–1433, 78–1468 and 78–1437.

United States District Court, District of Columbia.

Aug. 29, 1978.

On Motion for Reconsideration Nov. 14, 1978.

---

Donald B. Craven, Jay L. Carlson, Craig D. Miller, Terry A. Barnett, Richard W. Bowe, Edwin Jason Dryer, Timothy J. Bloomfield, Washington, D. C., for plaintiffs.

Earl J. Silbert, U. S. Atty., Haywood Torrence, Jr., Fred W. Drogula, Thomas C. Green, David Galbraith, Barbara Weller, Washington, D. C., for defendants.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

These cases are before the Court on the request of Texaco, Inc., Mobil Oil Cor-

poration, Exxon Corporation, Clark Oil and Refining Company, Crown Central Petroleum Corporation, and the Independent Refiners Association of America (plaintiffs herein) for a permanent injunction staying the effectiveness of the Interim Decision and Order issued by the Department of Energy (DOE) on July 20, 1978, and the Federal Energy Regulatory Commission's motion to dismiss or, in the alternative, for summary judgment. The Court finds that, pursuant to Fed.R.Civ.P. 56, no genuine issue of material fact remains as to the issue of the jurisdiction of the Federal Energy Regulatory Commission (FERC).[1] Therefore, for the reasons hereinafter stated, the Court will remand this matter to the Federal Energy Regulatory Commission for a consideration of the appeals of the plaintiffs herein from the issuance of the Interim Decision by the Office of Hearings and Appeals.

## I. THE STATUTORY SCHEME

The Old Oil Allocation Program (or "Entitlements Program"), 10 C.F.R. § 211.67, is part of the comprehensive program administered by the DOE for the mandatory allocation and pricing of crude oil, residual fuel oil and each refined petroleum product under its mandate found at § 4(a) of the Emergency Petroleum Allocation Act of 1973 ("EPAA"), as amended, 15 U.S.C. § 751, § 753. The Entitlements Program is designed to correct certain economic distortions arising from the two-tier pricing system for crude oil, 10 C.F.R. § 212.71, et seq. Under the two-tier system, a ceiling price is imposed on crude oil produced from a particular property when production was equal to or less than the level of production from that property in the same month of 1972 (i.

e., lower-tier or "old" oil). Crude oil produced in excess of 1972 production levels from the same property (i. e., upper-tier or "new" oil) as well as newly discovered oil and certain imported oil is permitted to be sold at a much higher price. The disparity between the price of upper tier and lower tier crude oil did not have an equal impact on all refiners. Crude cost differentials were translated into significant price differentials which in turn caused competitive disparities in the marketplace. The Entitlements Program is a *cost equalization mechanism* —promulgated to correct the consequences of inequitable allocation of low-cost old oil by allocating those supplies on a proportionate basis.

An "entitlement" represents the right to refine a barrel of low-cost old oil. Under the program a refiner is required to have an "entitlement" for each barrel of old oil it refines each month. Every refiner is issued on a monthly basis a number of entitlements equal to its proportionate share of the national monthly old oil supply. A refiner with a greater proportion of old oil than the national proportion of old oil is required to buy entitlements to cover its amount of old oil in excess of the national average. A refiner with more entitlements than it needs sells the entitlements at a price, calculated each month, that is roughly the difference between the price of upper tier and lower tier oil. These transactions achieve the same purpose as the allocation of lower-priced crude oil without requiring the physical transfer of the oil.

The DOE's authority to grant entitlements relief is found at § 504(a) of the DOE Organization Act, 42 U.S.C. § 7194:

> The Secretary or any officer designated by him shall provide for the making of

1. Although none of the plaintiffs has formally moved for summary judgment on this issue, plaintiff Independent Refiners Association of America recommended this approach in its Memorandum in Support of Separate Issues Presented in IRAA's Complaint, at 5. In addition, all parties agreed at the hearing on August 23, 1978, that the issue of whether the Federal Energy Regulatory Commission had jurisdiction to hear the appeals herein was ripe for summary judgment in that there are no materi-

al facts in dispute as to this issue. Nevertheless, a motion for summary judgment is not a prerequisite to the entry of judgment for a non-moving party. *See Yacavone v. Bailar*, 455 F.Supp. 287 n. 1 (D.D.C.1978); *International Union UAW v. National Right to Work Legal Defense and Education Foundation, Inc.*, 433 F.Supp. 474, 478–79 n. 3 (D.D.C. 1977), *appeal pending*, No. 77–1766; *National Savings and Trust Company v. Sarolea*, 269 F.Supp. 4, 7 (D.D.C.1967).

such adjustments to any rule, regulation, or order . . . issued under . . the Emergency Petroleum Allocation Act of 1973 . . . consistent with the other purposes of the relevant Act, as may be necessary to prevent special hardship, inequity, or unfair distribution of burdens, and shall by rule, establish procedures which are available to any person for the purpose of seeking an . . . exception to . . . such rule, regulation, or order. The Secretary or any such officer shall additionally insure that each decision on any application or petition requesting an adjustment shall specify the standards of hardship, inequity, or unfair distribution of burden by which any disposition was made, and the specific application of such standards to the facts contained in any such application or petition.

The exceptions procedures referred to in § 504(a) provide for the grant of exceptions relief in some cases of "serious hardship or gross inequity." 10 C.F.R. § 205.50(a)(1).

Because of certain undesirable properties of California crude oil, the imposition of price controls has a very negative effect upon sales and production of California crude oil. The DOE has for some time sought to relieve this problem through adjustments to the Entitlements Program.

On June 15, 1978, the Office of Hearings and Appeals (OHA) of the DOE issued a Notice of Public Hearing and Soliciting Comments concerning applications for exception relief. This notice announced the intention of OHA to provide, on a case-by-case basis, an administrative method to alleviate obstacles found to inhibit non-California refiners from processing California heavy crude oil. The notice proposed to grant relief where, for example, a producer or refiner demonstrated that relief is necessary to offset high transportation and other costs and where there is the danger that continued production of the crude oil involved would be uneconomical in the absence of the requested relief.

## II.  BACKGROUND

On June 22, 1978, defendant Commonwealth Oil Refining Company, Inc. (CORCO) applied to the DOE for exception relief. By filing this application, CORCO sought to take advantage of the special procedure which DOE established for providing exception relief to domestic refiners located outside of California who could establish to the satisfaction of the Department that such relief is necessary to provide them with the economic incentive to use California crude oil. After a consideration of the application of CORCO, the OHA determined that CORCO qualified for exception relief.

Specifically, the Proposed Decision and Order issued on June 30, 1978, granted CORCO two types of relief. First, it granted CORCO exception relief worth $4.41 for each barrel of California crude oil that it purchased for processing in its Puerto Rican refinery. Second, it partially excepted CORCO from the entitlements penalties assessed against refiners producing residual fuel sold into the East Coast market. Texaco, Mobil and Exxon, among others, have filed Notices of Objection to this proposed decision and order.

On July 17, 1978, CORCO filed an application for interim relief. In its application, CORCO cited the fact that it would be able to commence transporting significant volumes of California crude oil for processing within the next 30 days, but noted that it would not be economically feasible to do so unless the Department would implement the relief contained in its Proposed Decision and Order while it evaluated the merits of the objectors' Statements of Objections. After consideration of CORCO's application, on July 20, 1978, the OHA granted CORCO's application for interim relief and issued an Interim Decision and Order (Interim Decision), which specified that the relief granted would not later "be rescinded or significantly reduced."

By letter dated July 21, 1978, Exxon filed a notice of appeal from the Interim Decision with the Federal Energy Regulatory Commission (FERC) and simultaneously requested that FERC grant an immediate

stay of the decision. Mobil and Texaco filed notices of appeal and requests for stay with FERC dated July 26, 1978 and July 14, 1978, respectively. Crown filed a notice of appeal on the same day and joined in Exxon's request for a stay. IRAA filed a notice of appeal and request for stay on August 1, 1978.

On August 3, 1978, FERC adopted procedural regulations governing its review of denials of adjustment requests, which it issued on August 8, 1978. On August 9, FERC issued an order dismissing Exxon's appeal from the July 20 Interim Decision of DOE on the grounds that FERC lacks the statutory authority to review grants of requests for exceptions.

### III. CHALLENGES TO THE ADMINISTRATIVE ACTIONS

Plaintiffs claim that the Interim Decision was made in violation of the DOE's own regulations which they claim require notice to aggrieved parties, ten days in which to comment, written opposition, oral presentation, etc. 10 C.F.R. § 205.53 *et seq.* They further claim that the record established by the DOE in its processing of the June 15 amendments lacks evidence of the factors that the DOE has established for granting an exception. These factors, plaintiffs' claim, allow exception relief to (1) expand the domestic market for California crude oil, (2) where the producers of such crude oil would be likely to shut in such production in the absence of the exception relief, and (3) where the California crude oil would displace imported crude oil. Plaintiffs also argue that § 504(a) of the DOE Act does not authorize the granting of exception relief in this case to CORCO because CORCO has failed to prove that such relief is necessary to alleviate "hardship, inequity, or unfair distribution of burdens" that have been created by the DOE's regulatory programs.

Moreover, plaintiffs raise a constitutional argument.[2] They claim that because the exception relief to CORCO requires plaintiffs to purchase entitlements and thus suffer a loss of money, this constitutes "property" within the meaning of the due process clause of the fifth amendment to the Constitution. Therefore, plaintiffs contend, notice and opportunity for a hearing were required prior to the issuance of the Interim Decision.

In addition, plaintiff Independent Refiners Association of America contends that FERC has improperly declined to review the Interim Decision. FERC claims that it lacks jurisdiction to do so because the appeal challenges the propriety of an order *granting*, rather than *denying*, exception relief.

### IV. DISCUSSION

In support of its decision to deny jurisdiction to plaintiffs' appeal from the granting of the Interim relief to CORCO, defendant FERC relies upon both the language and legislative history of the statute which confers jurisdiction upon FERC. Section 504(b)(1) of the DOE Act, 42 U.S.C. § 7194(b)(1), states:

> If any person is aggrieved or adversely affected by a denial of a request for adjustment under subsection (a) of this section, such person may request a review of such denial by the Commission and may obtain judicial review in accordance with this subchapter when such a denial becomes final.

FERC also cites several references in the conference report which refer to denial of requests for adjustments. FERC argues that the statute and legislative history refer only to review of a "*denial* of a request for adjustment" and, therefore, because CORCO was *granted* its request for adjustment, FERC lacked jurisdiction over any appeal from it. The Court, however, disagrees.

■■■ It is well established that if a statute is clear on its face, resort to legislative history or other sources is inappropriate. *See, e. g., Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); *Aviation Consumer Action Project v. Washburn*, 175

---

**2.** All parties agree that if plaintiffs have raised a substantial constitutional issue, this Court must certify that issue to the Temporary Emergency Court of Appeals.

U.S.App.D.C. 273, 278, 535 F.2d 101, 106 (1976). Contrary to FERC's contention, the Court finds that the statute in issue is not clear on its face. The term "adjustments" is not defined in § 504(b)(1). Its definition is crucial because, if plaintiffs' request for rescission or modification of the granting of the interim relief constitutes a request for "adjustment," then the denial of this request for adjustment would constitute a sufficient predicate for FERC to obtain jurisdiction pursuant to the statute. Because this provision is not itself clear on its face, the Court must look elsewhere for a definition of "adjustment."

■■■ Section 504(b)(1) above incorporates by reference subsection (a) of the same section. Subsection (a) appears to define "adjustment"

> The Secretary or any officer designated by him *shall provide for the making of such adjustments to any rule, regulation or order* described in section 501(a) issued under the Federal Energy Administration Act, the Emergency Petroleum Allocation Act of 1973, the Energy Supply and Environmental Coordination Act of 1974, or the Energy Policy and Conservation Act, consistent with the other purposes of the relevant Act, as may be necessary to prevent special hardship, inequity, or unfair distribution of burdens, and shall by rule, establish procedures which are *available to any person for the purpose of seeking an interpretation, modification, or rescission of, exception to, or exemption from, such rule, regulation of order.*

(Emphasis added). Thus, the term "adjustment" applies to a variety of agency actions as to which a petitioner may seek relief, including "interpretation, modification or rescission of, exception to, or exemption from such rule, regulation or order." FERC's interpretation of the term "adjustment" would render ineffective and meaningless various parts of the statute and this the Court cannot accept. *See Newell v. Federal Energy Administration*, 445 F.Supp. 80, 83 (D.D.C.1977). A basic maxim of statutory construction is that every word, clause, and sentence of a statute

should, if possible, be given effect. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed.2d 615 (1955); *Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission*, 117 U.S.App.D.C. 34, 38, 325 F.2d 230, 234 (1963). Consequently, the plaintiffs' objections to the granting of the interim relief to CORCO and a rejection of those objections by the OHA was a "denial of a request for adjustment," within the meaning of § 504(b)(1).

This conclusion is further supported by the legislative history of the statute. An earlier version of § 504(a) refers to "adjustments" as "seeking an interpretation, modification, rescission, or order." 95 Cong.Rec. 7964 (1977). The conference report acknowledged this earlier version, but altered it.

> The House amendment provided for a similar adjustment process by the Secretary, *but added that exceptions to and exemptions from a rule are included in adjustments,* that adjustments could be requested under the Federal Energy Administration Act, as well as the other statutes cited in the Senate bill.

S.Rep. No. 367, 95th Cong., 1st Sess. 84 (1977). Congress apparently added the terms "exceptions to and exemptions from" to the list of adjustments as an afterthought, thus strongly negating the validity of FERC's argument that only denials of exceptions were intended as triggering FERC's jurisdiction. In fact, as is clear from the comparison of these two versions of the statute, the term "denial of a request for adjustment" was originally intended by the Senate to include denials of requests for an "interpretation, modification, rescission, or order"—and not denials of requests for exceptions. Accordingly, the Court cannot accept FERC's attempt to limit the scope of the definition of "adjustment."

The Court firmly believes that any other interpretation of the statute would do violence to the purpose Congress had in drafting this review process. In the conference report, the conferees stated:

Further, it should be emphasized that the procedures specified in Sections 503 and 504 are intended to clearly reaffirm the intent of Congress that those involved in enforcement actions or proceedings involving requests for adjustments be extended procedural due process. Congress always intended that the notions of fair play and due process be followed in the administrative process. S.Rep. No. 539, 95th Cong., 1st Sess. 85–86 (1977). One could hardly call it "fair play" and "due process" for Congress to have given applicants for exceptions a manner of administrative review, but not objectors to the exceptions.

## V. CONCLUSION

The Court holds that the Federal Energy Regulatory Commission had jurisdiction over the appeal of the plaintiffs from the granting of the interim relief to CORCO. Therefore, the Court will remand this case to FERC to allow the agency to reconsider the propriety of the actions it has taken.[3]

An order in accordance with the foregoing will be issued of even date herewith.

## ON MOTION FOR RECONSIDERATION

The Court has before it numerous memoranda regarding the Federal Energy Regulatory Commission's motion for reconsideration of this Court's August 28, 1978 Memorandum and Order, which held that FERC had jurisdiction to consider appeals from the granting of exception relief, as well as from the denial of exception relief. The Court has considered the "new" argument

---

**3.** It would be injudicious if this Court were to remand this matter without alerting FERC to the Court's tentative view of the issue of whether the interim order was properly issued under 10 C.F.R. § 205.65, as defendant Department of Energy has argued. That section reads:

The Director [of the Office of Exceptions and Appeals] or his designee may also issue any interim or ancillary Orders or make any ruling or determination which he deems necessary to ensure that the proceedings specified in this Subpart are conducted in an appropriate manner and that the resolution of the issues presented in the proceeding are not unduly delayed.

---

that FERC raised in its motion and finds it unpersuasive.

FERC's new argument in support of its position that a request for relief from any order granting exception relief cannot be appealed to FERC is that an "adjustment," as the term is used in § 504(b)(1) of the Department of Energy Organization Act, may be obtained only from "any rule or regulation or any order having the applicability and effect of a rule (as defined in Section 551(4) of Title 5, United States Code)." § 504(a) of the DOE Act. Therefore, according to FERC's theory, an order granting exception relief does not have the "applicability and effect of a rule" and, consequently, an appeal from such an order does not confer jurisdiction upon FERC, who only has jurisdiction over a "denial of a request for adjustment."

■ The flaw in this line of reasoning is the conclusion that an order which grants exception relief, such as the Interim Order here, does not have the "applicability and effect of a rule." A "rule" is defined by 5 U.S.C. § 551(4) as an "agency statement of general or particular applicability and future effect." The Interim Order adjusts, prospectively, CORCO's obligations as a participant in the Entitlements Program. In so doing, the Order alters the amount of entitlements which all other participants in the program will in the future be required to purchase or permitted to sell. Thus, the Interim Order has "general or particular applicability and future effect." *

It is, therefore, by the Court, this 14th day of November, 1978,

> Upon careful consideration of this provision and the briefs of the parties, the Court has tentatively concluded that this provision is limited to orders which are issued to ensure that the proceedings "are conducted in an appropriate manner" and "are not unduly delayed." This section does *not* appear to permit the issuance of an interim order which is final in nature and which goes beyond a mere procedural type of order.

---

* It should be emphasized that the Interim Order need not itself be a "rule" as long as it has the "applicability and effect of a rule." § 501(a) of the DOE Act.

ORDERED, that the motion of the Federal Energy Regulatory Commission for a stay and/or reconsideration be, and the same hereby is, denied; and it is

FURTHER ORDERED, that the above-captioned case be, and the same hereby is, stayed pending an expedited appeal of this Court's August 28, 1978 Memorandum and Order.