Louis J. BONNAFFONS, William D. Melton, Shell Oil Company, Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF ENERGY, Defendant;

The Government of Puerto Rico, the Shell Company (Puerto Rico) Limited, Commonwealth Oil Refining Company, Inc., Intervening Defendants.

Civ. A. No. 79–2375.

United States District Court, District of Columbia.

June 10, 1980.

---

34. *See* 42 U.S.C. § 2021. *See generally In re Self-Powered Lighting, Ltd.*, No. B–195935, slip op. at 13–15 (G.A.O. March 13, 1980).

35. *Id.* at 15.

William Simon, William E. Wickens, W. Donald Dresser, Washington, D. C., for plaintiffs.

Arthur Gowran, Sandra K. Webb, W. Thomas Rosemond, Jr., Dept. of Energy, Washington, D. C., for defendant.

Fred W. Drogula, Alan R. Yuspeh, Washington, D. C., for intervening defendant Corco.

Max O. Truitt, Jr., C. Loring Jetton, Jr., Gail F. Schulz, Washington, D. C., for intervening defendant The Shell Co. (PR).

John R. Cope, Roger L. Reynolds, Washington, D. C., for intervening defendant Government of Puerto Rico.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Shell Oil Company ("Shell USA"), a major American oil company, joins one of its service station operators and a gasoline customer as plaintiffs suing to set aside an order of the United States Department of Energy ("DOE"). The order, issued by DOE's Office of Hearings and Appeals ("OHA"), directs Shell USA to supply a related Puerto Rican distributor, The Shell Company (Puerto Rico) Limited ("Shell P.R.") with motor gasoline and to purchase the gasoline from Puerto Rican refiners. The effect of the order is to impose a cost burden on Shell USA and to assure availability of gasoline at lower cost to Shell P.R., which had sought the relief before OHA.

Plaintiffs[1] in essence contend that DOE exceeded its lawful authority and that its action is not supported by substantial evidence in the record of this proceeding. Their motion for summary judgment was met by cross-motions from DOE and the three interested parties allowed to intervene.[2] The Court thus is called upon to determine whether or not OHA's order is within the agency's lawful authority and whether, if such be the case, its determinations are supported by substantial evidence. The issues have been fully briefed and argued, and the Court has reviewed the 1229-page administrative record. Jurisdiction is

1. Although there are two other nominal plaintiffs, Shell USA is the obvious moving force behind this lawsuit. For convenience, the Court refers interchangeably to "Shell USA" and "plaintiff" or "the plaintiffs."

2. Intervenor-defendants are Shell P.R., which distributes motor gasoline in Puerto Rico, Commonwealth Oil Refining Co., Inc. ("Corco"), which is the largest refiner in Puerto Rico and will supply Shell with most if not all of its required gasoline, and the Government of Puer-

to Rico, appearing as *parens patriae*. Corco cross-moves on both the statutory authority and substantial evidence issues. Shell P.R. supports the DOE position with respect to substantial evidence, although it has not formally cross-moved. Further, Shell P.R. cross-moves on jurisdictional grounds, which are addressed below. *See* note 3 *infra*. The Government of Puerto Rico, in its opposition, argues that the remedy granted was fully within OHA's lawfully constituted powers.

properly invoked by the parties. 42 U.S.C. § 7192 (1976 & Supp. II 1978); 15 U.S.C. § 754(a)(1) (1976).[3]

## I.

The grant of exception relief challenged herein was intended to alleviate the effect of DOE's gasoline price regulations, promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751 *et seq.* (1976). The origin and operation of the mandatory petroleum price regulations, 10 C.F.R. § 212 (1979), need not be addressed at length. The agency distinguishes between "refiners," whose production costs must be averaged or "rolled in" on a nationwide basis, and "resellers," who can pass through increased costs directly to local customers. *See* 10 C.F.R. §§ 212.83, 212.93 (1979). This distinction is of particular significance in Puerto Rico, where the gasoline distributed is purchased largely from local refiners (principally Corco) dependent on unpredictably expensive foreign crude oil for their refinery feedstock. In 1974, responding to price inequities between Puerto Rican and mainland consumers, the predecessor to DOE amended its regulations to provide that Puerto Rican distributors affiliated with mainland refiners (*i. e.,* Shell P.R.'s principal competitors) be desig-

nated "refiners." 39 Fed.Reg. 17764 (1974). As a result, resale prices in Puerto Rico no longer fully reflected the higher cost of the foreign oil that was being purchased. Instead, prices appreciably diminished when island costs were rolled in with the lesser cost of domestic oil being used by mainland affiliates.

Unlike the other major gasoline wholesalers or distributors on the island, Shell P.R. is not directly affiliated with a United States mainland refiner.[4] Because of its different status, Shell P.R. is thus peculiarly vulnerable to substantial variations in the price of the gasoline it acquires for marketing. As part of the larger rulemaking proceeding in 1974, Shell P.R. did benefit from a special arrangement whereby Corco sold it gasoline at a reduced price and recouped lost revenues by charging higher prices to other island distributors. 39 Fed. Reg. 17765 (1974). This "Shell differential," upheld in the courts as a proper exercise of agency discretion,[5] was withdrawn several months later upon a finding that market conditions no longer demanded it. 39 Fed.Reg. 36320 (1974). For the next ensuing period, Shell P.R. apparently remained competitive with other major distributors on the island.

---

**3.** Shell P.R.'s argument that plaintiffs have failed to exhaust administrative remedies by not appealing to the Federal Energy Regulatory Commission ("FERC") is without merit. Under the plain language of the statute, 42 U.S.C. § 7194(b)(1) (1976 & Supp. II 1978), FERC's jurisdiction extends only "to a denial of a request for adjustment." Plaintiffs here appeal from the *grant* of such exception relief, which falls outside the contemplated limits of FERC review. Both OHA and FERC regulations confirm this clear statutory meaning. Moreover, FERC's repeated refusals to review OHA decisions granting exception relief render such an administrative appeal futile and therefore unnecessary for jurisdictional purposes. *See, e. g., Weinberger v. Salfi,* 422 U.S. 749, 765–67, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975). The decision in *Texaco v. DOE,* 460 F.Supp. 339 (D.D.C.1978), *appeal dismissed for lack of jurisdiction,* 616 F.2d 1193 (Em.App.1979), *appeal docketed,* Nos. 79–1643 *et al.* (D.C.Cir., June 25, 1979), is distinguishable on its facts and in any event not controlling. Plaintiffs' objections to the instant decision when it was proposed by OHA were no more than comments

from an interested party specifically provided for by regulation. *See* 10 C.F.R. § 205.62 (1979). To construe these objections as a request for adjustment would, in effect, transform each act of participation in an exception proceeding into a separate adjudicatory event, an obviously unreasonable and unintended result.

**4.** Exxon, Mobil, Texaco, Gulf, and other mainland oil companies operate Puerto Rican subsidiaries that market gasoline on the island. Shell P.R. is a subsidiary of a foreign entity, the Royal Dutch/Shell Group, with which plaintiff Shell Oil Company also is affiliated. The parent corporation of Shell P.R. also owns 69 percent of Shell USA, and there is some overlap in Board of Directors membership of the related firms.

**5.** *See Texaco, Inc. v. Federal Energy Administration,* 398 F.Supp. 865, 877 (D.D.C.1975), *affirmed,* 531 F.2d 1071, 1077 (Em.App.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

In early 1979, however, renewed tensions within the foreign crude oil market resulted in substantial cost increases for all island distributors. Because Shell P.R. was unable to spread these higher costs as its principal affiliated competitors were required to do, it claimed to be suffering large losses in sales volume and substantially diminished profit margins. On March 16, 1979, Shell P.R. applied to OHA for exception relief from the effect of the petroleum price regulations. Specifically, Shell P.R. stated that unless an adjustment was made to offset its severe competitive disadvantage, it would experience a serious hardship and a gross inequity. It proposed several possible forms of relief.

A number of third parties took an interest in Shell P.R.'s application. OHA solicited and reviewed extensive written comments, and on May 8, 1979, a hearing was held at which representatives from the applicant, several of its principal competitors, and the Government of Puerto Rico testified. Shell USA received notice of the proceeding, and was urged to attend. It did not do so, although aware that its interests might be affected. Following the hearing, and substantial post-hearing submissions from many interested parties, OHA issued a proposed decision and order on July 13, 1979. The Order proposed to effectuate relief by requiring Shell USA to supply. Although not one of the forms of relief suggested by Shell P.R. in its application, this remedial approach had been publicly raised and discussed both before and during the hearing. Shell USA filed the only statement of objections to OHA's tentative results. The agency's proposed decision was in essence fully adopted on August 28, 1979, along with a particularized rebuttal to each objection made. This action then followed.

6. See 10 C.F.R. §§ 205.2, 205.55 (1979).

7. See Exceptions and Appeals Guidelines, 7 En. Mngm't Rep. (CCH) ¶ 80,006 (1978).

8. See, e. g., H.R.Rep.No.539, 95th Cong., 1st Sess. 84–85 (1977) (Conference Report), re-

II.

DOE is authorized to grant such exception relief from "any rule, regulation or order issued under . . . [various energy statutes], consistent with the other purposes of the relevant Act, *as may be necessary to prevent special hardship, inequity, or unfair distribution of burdens . . ."* Section 504(a), DOE Organization Act, 42 U.S.C. § 7194(a) (1976 & Supp. II 1978) (emphasis added). The current mandate confers broad agency discretion to fashion appropriate exception relief. Plainly permissive language in the DOE Organization Act supports this discretion. The legislative history confirms it.

Through a series of federal energy statutes enacted since 1970, Congress has attempted to develop an emergency response to the enormous increase in world oil prices attributable to the Arab oil embargo and other turbulent events in the Middle East and elsewhere. The authority to confer exception relief is an integral part of this emergency statutory network. Congress has repeatedly recognized that an exceptions process, by its very nature designed to resolve unforeseen or unforeseeable factual situations in a complex, technical and highly volatile field, must remain open ended. Although the agency has promulgated regulations [6] and guidelines [7] to assist in the review of exception applications, even the general language of these administrative aids is not meant to anticipate all possible forms of appropriate relief.[8] Given this broad discretion, it is hardly surprising that courts have exercised great deference in reviewing challenges to the agency's exception determinations. *See, e. g., Powerine Oil Co. v. FEA,* 536 F.2d 378 (Em.App. 1976); *Pasco, Inc. v. FEA,* 525 F.2d 1391 (Em.App.1975); *New England Petroleum Co. v. FEA,* 455 F.Supp. 1280 (S.D.N.Y. 1978).

printed in [1977] U.S.Code Cong. & Admin. News, pp. 925, 955–56; S.Rep.No.1119, 94th Cong., 2d Sess. 60 (1976) (Conference Report), reprinted in [1976] U.S.Code Cong. & Admin. News, pp. 2027, 2036–37.

In this instance, the "relevant Act" with which a grant of exception relief must be consistent is the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. §§ 751 et seq. (1976). The Act authorizes the President to provide for equitable allocation of scarce petroleum products. In drafting the EPAA, Congress declared its intent to preserve administrative flexibility by "recommend[ing] that the Executive be assigned the responsibility for crafting the program pursuant to Congressionally defined (though generally stated) objectives." H.R.Rep.No.531, 93d Cong., 1st Sess. 12, reprinted in [1973] U.S.Code Cong. & Admin.News, pp. 2582, 2589. The final objectives are both general and far-reaching. See 15 U.S.C. § 753(b)(1)(A) to (I) (1976). Their mandated attainment, "to the maximum extent practicable,"[9] reflects Congress's intent that the agency balance the various objectives in its effort to implement a complex allocation scheme for the petroleum industry.[10] The necessity for such rough accommodations in a difficult and rapidly changing area again warrants restraint in the exercise of judicial review. See Powerine Oil Co. v. FEA, supra; Leffler v. FEA, 455 F.Supp. 623 (D.D.C.1976). A DOE order granting exception relief should be enjoined only on a clear showing that it exceeds the agency's authority, or that it is based on findings not supported by substantial evidence. See. 12 U.S.C. § 1904 note (section 211(d)(1) of Economic Stabilization Act of 1970, incorporated via 15 U.S.C. § 754(a)(1) (1976)).

### III.

Shell USA primarily disputes OHA's authority to impose specific purchasing obligations. The agency's power to require that plaintiff sell gasoline to Shell P.R. cannot seriously be questioned. Assignment of a new base period supplier in an exception proceeding is often essential to relieve the inequity of disparate pricing. Both courts and the agency have recognized that such reassignment, and the concomitant obligation placed on the new supplier, fall within the proper ambit of exception relief. Marathon v. DOE, 482 F.Supp. 651 (D.D.C.1979); Mobil Oil Corp. v. DOE, 4 En.Mngm't Rep. (CCH) ¶ 26,147 (D.D.C. 1979). See also Exceptions and Appeals Guidelines, 7 En.Mngm't Rep. (CCH) ¶ 80,-012 (1978). Here, the applicant and its new supplier are hardly strangers to one another. The record establishes their substantial relationship through common ownership if not actual shared control. The apparent permanent nature of the reassignment is of no special significance, as it represents a rational response to a recurrent price problem which can be altered by an application for modification or rescission should changed conditions so dictate.

The additional requirement that Shell USA obtain its supplies from Corco or other smaller refiners located in Puerto Rico also falls within the broad exception authority provided to DOE by Congress. DOE's power to regulate purchase as well as sale of petroleum products is not prohibited by any statute or regulation. Congress encouraged DOE to respond to unforeseen factual situations. There is, moreover, general support for the authority to impose purchasing obligations in the Department's longstanding Entitlements Program, 10 C.F.R. § 211.67. See Cities Service Co. v. FEA, 529 F.2d 1016 (Em.App.1975), cert. denied, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976). Thus the lack of express authority is insignificant.

In devising appropriate exception relief, OHA properly took cognizance of all potentially affected parties, and of the statutory goals at stake under the EPAA. Based on evidence in the record,[11] the agency concluded that certain statutory objectives were threatened by Shell P.R.'s distressed

---

**9.** 15 U.S.C. § 753(b)(1) (1976).

**10.** See, e. g., H.R.Rep.No.628, 93d Cong., 1st Sess. 12, 26 (1973) (Conference Report), reprinted in [1973] U.S.Code Cong. & Admin. News, pp. 2688, 2689, 2703.

**11.** The sufficiency of this evidence is addressed below.

position. Its subsequent action was influenced by its responsibility, "to the maximum extent practicable," to preserve as economically competitive an independent Puerto Rican petroleum refiner and to ensure equitable distribution and pricing. *See* 15 U.S.C. § 753(b)(1)(D), (F) (1976). To conclude that a loss by Corco of some 25 percent of its island sales would create regional hardship was not unreasonable, given the wealth of agency experience with the Puerto Rican economy and petroleum industry. OHA's determination simply left the island's largest refiner in the same market position it enjoyed before exception relief was granted. The cost, which admittedly is borne by Shell USA, is a necessary element in the exceptions process.

 Inevitably, the granting of an exception entails a balancing of diverse equitable considerations. There can be no relief without imposition of countervailing burdens. A decision was made to impose the burden on a large mainland refiner, one associated with the applicant and capable of spreading costs as its mainland competitors already were doing. Having decided that relief, and consequently some market interference, were necessary, the agency opted for a limited type of market adjustment. This decision was certainly not arbitrary, nor was it excessive. *See Powerine Oil Co. v. FEA, supra.* In setting forth its reasons, the agency properly referred to certain statutory objectives as part of its overall balancing process. These objectives, although important, were not unduly elevat-

ed, nor were they transformed into a general subsidy for independent refiners or the Puerto Rican petroleum industry. *Cf. OKC Corp. v. DOE*, 612 F.2d 555, 557–58 (Em. App.1979); *Twin City Barge & Towing Corp. v. Schlesinger*, 603 F.2d 197, 206 (Em. App.1979). No disregard of congressional mandates has been shown. The fact that the precise form of relief granted was unusual and perhaps unprecedented does not carry it beyond the legitimate scope of agency authority.[12]

### IV.

Plaintiffs raise a series of concerns with respect to the substantiality of record evidence underlying OHA's major factual premises, and urge the Court to permit supplementation of the record through discovery. Specifically, Shell USA contends that Shell P.R. was not suffering gross inequity or hardship, that whatever injuries are involved were not caused by DOE regulations, and that the "precarious nature of the petroleum industry in Puerto Rico" was incorrectly found solely on the basis of prior administrative proceedings. For the most part these concerns come too late. Shell USA made a conscious decision not to take part in the early, critical stage of the OHA proceeding. Having been advised that its interests might be adversely affected, and having been expressly urged by OHA to attend the May 8, 1979, hearing, Shell USA made no appearance and submitted no legal or factual materials to the agency following the hearing.[13] Moreover, when it finally

12. Equally without merit is Shell USA's related argument that the relief granted is somehow inconsistent with the agency's 1974 determinations modifying pricing rules for Puerto Rican firms. The instant proceeding seeks a fair redistribution of injury costs experienced by the applicant. An earlier discretionary refusal to forge a permanent connection between these two Shell firms in a rulemaking context is no legal bar to uniting their prospects now under the rubric of exception relief. The agency's decision to act through an adjudicatory procedure rather than undertake full-scale rulemaking is both within its sound discretion and reasonable in light of the individual request made. *See generally SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Finally, because the exception proceeding primarily

addresses the individual applicant's distressed condition, equitable considerations implicating the public interest need not be as fully developed on the record as they would be in a more traditional rulemaking-type proceeding. Accordingly, the absence from this record of detailed findings on the state of the Puerto Rican petroleum industry reflects no inconsistency with prior rulemaking determinations.

13. In the four months prior to publication of the proposed decision and order, all the other major American oil companies with connections to Puerto Rican distributors, as well as the Government of Puerto Rico, were active participants. Texaco, Mobil, Exxon and Gulf all filed pre- and post-hearing comments and testified during the proceeding.

did enter an appearance to object to the proposed decision, Shell USA raised few factual concerns and failed to adhere to critical administrative procedures.

■ In its statement of objections, plaintiff did not adequately specify certain findings of fact which it now wishes to contest, nor did it set forth alternative findings as required by 10 C.F.R. § 205.62 (1979). The 26-page Statement of Objections chiefly attacked OHA's legal authority to act as contemplated. Agency findings regarding peculiarities of the Puerto Rican petroleum industry were not seriously challenged. In particular, there is no indication of protest or opposition to the official notice taken of the precarious state of the Puerto Rican refining industry, notably Corco, based on prior agency experience. The noticing of such facts, which relates only to the form of relief contemplated, was entirely proper in view of Shell USA's full opportunity for rebuttal. *See generally NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 348–49, 73 S.Ct. 287, 289–90, 97 L.Ed. 377 (1953); *Safeway Stores, Inc. v. FTC*, 366 F.2d 795, 803 (9th Cir. 1966). That plaintiff chose not to identify contrary evidence or otherwise specifically preserve its factual objections at the administrative level precludes their being subsequently entertained on judicial review. *D.C. Transit System, Inc. v. Washington Metropolitan Area Transit Commission*, 466 F.2d 394, 413–14 (D.C.Cir.), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 688, 34 L.Ed.2d 673 (1972). *See also City of Vanceburg v. FERC*, 571 F.2d 630, 642 (D.C.Cir.1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978); *Glaziers Local No. 558 v. NLRB*, 408 F.2d 197, 203 (D.C.Cir.1969).

■ The simultaneous failure to move for an evidentiary proceeding or for additional discovery is likewise fatal. By ignoring its opportunity to supplement DOE's factual findings on this and other issues, Shell USA failed to exhaust administrative remedies. 10 C.F.R. §§ 205.64(b), 205.66(a) (1979). There is no suggestion that plaintiff was unfamiliar with the applicable reg-

ulations. Its decision not to inquire further through administrative channels effectively waives any right to such additional discovery here.

■ What remains is plaintiffs' challenge, on substantial evidence grounds, to the findings that Shell P.R. experienced a gross inequity, and that the inequity was primarily attributable to DOE's regulatory program. Reviewing the record in light of the applicable deferential standard, the Court concludes that both findings are indeed supported by substantial evidence. Briefly, there is ample evidence in the record that Shell P.R. was in severe economic distress in early 1979. It was forced to pay Corco abnormally high prices for its gasoline (e. g., R. 853, 862). Its resale price was measurably higher than that charged by its chief competitor, Esso, as well as others (e. g., R. 859, 975–78). Without the benefit of averaging, Shell P.R. could recover its costs only in island markets. Attempts to do so by increasing prices led to substantial losses in market share (e. g., R. 855, 860). The alternative was to absorb increased costs and accept virtual elimination of profitability. To allow this situation to continue indefinitely jeopardized its dealers' ability to stay in business (e. g., R. 861–62).

Similarly, the record sufficiently supports OHA findings as to causation. Refiner regulations required Shell P.R.'s principal competitors to roll in their prices with those of their mainland parents. Despite plaintiffs' suggestions to the contrary, the principal competitors all testified that they did in fact roll in their Puerto Rican costs (e. g., R. 250–51 (Texaco), 728 (Gulf), 915, 956 (Exxon)). Shell P.R.'s status as a reseller places it in a distinctly unfavorable position. Its lack of direct or indirect access to lower cost gasoline from the United States leaves it vulnerable to soaring and unpredictable prices on the world crude market (e. g., R. 736, 857–58, 862).

Shell USA has failed to establish any ground for relief.[14] For the reasons set

---

14. In their pleadings, plaintiffs raise additional assorted procedural contentions, and also claim an unconstitutional taking of property without compensation or due process. These matters

forth above, plaintiffs' motion for summary judgment is denied, defendants' motions for summary judgment are granted, and the case is dismissed. All pending discovery motions are therefore moot.

SO ORDERED.

were not briefed. For reasons previously discussed, discovery is not appropriate. Moreover, none of the matters raised is substantial, and, for the most part, they were not raised below. Accordingly, no relief will be granted.