INDEPENDENT INSURANCE AGENTS OF AMERICA, INC., Petitioner,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.

NATIONAL ASSOCIATION OF PROFESSIONAL INSURANCE AGENTS, et al., Petitioners,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.

NATIONAL ASSOCIATION OF CASUALTY, et al., Petitioners,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.

Nos. 86–1572, 86–1573, 86–1576.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1987.

Decided Dec. 29, 1987.

---

Jonathan B. Sallet, with whom Jamie S. Gorelick, Thomas E. Wilson and David G. Webbert were on the brief, for petitioners.

Richard M. Ashton, Federal Reserve System, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, James E. Scott and Douglas B. Jordan, Federal Reserve System were on the brief, for respondent.

John J. Gill and Michael F. Crotty were on the brief for amicus curiae, American Bankers Ass'n, et al., urging affirmance.

James F. Bell and Arthur E. Wilmarth, Jr. were on the brief for amicus curiae, Conference of State Bank Sup'rs, urging affirmance.

Timothy C. Russell and Alan G. Priest entered appearances for amicus curiae, American Council of Life Ins., et al.

Before GINSBURG and WILLIAMS, Circuit Judges, and ROBINSON,[*] Chief Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Chief Judge AUBREY E. ROBINSON, Jr.

AUBREY E. ROBINSON, Jr., Chief Judge:

In this case, Petitioners, several insurance agents trade associations, challenge final regulations of the Board of Governors of the Federal Reserve System ("the Board") redefining permissible insurance agency and underwriting activities for bank holding companies. 12 C.F.R. § 225 (Regulation Y) (1987). Specifically, Petitioners challenge two aspects of the regulations.[1] First, they challenge the Board's decision to delete from its regulations the requirement, implemented in 1979, that a bank holding company have its principal place of business in a small town in order to be eligible to conduct insurance activities in a small town (i.e., a town with a population not exceeding 5,000). 12 C.F.R. § 225.25(b)(8)(iii) (1987). Second, Petition-

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. A third challenge, alleging unreasonable delay by the Board in deciding whether section 4 of the Bank Holding Company Act of 1956, 12 U.S.C. § 1843, applies to banking subsidiaries of a bank holding company, was withdrawn from our consideration by Petitioners after it became apparent that the challenge was moot. *See* Petitioners' Reply Brief 2 n. 1.

ers challenge the regulations as impermissibly permitting the transfer of grandfather rights created by exemption D to section 4(c)(8) of the Bank Holding Company Act, 12 U.S.C. § 1843(c)(8)(D), to bank holding companies not entitled to exercise exemption D grandfather rights. *See* 12 C.F.R. § 225.25(b)(8)(iv) (1987). The Board counters that its decision to delete the principal place of business requirement was a valid exercise of discretion, consistent with the amendments to the Bank Holding Company Act effected by enactment of the Garn–St Germain Depository Institutions Act of 1982 ("the Garn–St Germain Act"), and that this Court, primarily because of ripeness considerations, should not entertain Petitioners' exemption D challenge.

For the reasons discussed below, we hold that the Board was not required by the Bank Holding Company Act as amended by the Garn–St Germain Act to retain the principal place of business requirement, that the Board validly exercised its discretion when it deleted the requirement from its regulations, and that the exemption D challenge is not ripe for review in this case. We therefore affirm the Board's regulations and deny the petition for review.

## BACKGROUND

The Bank Holding Company Act of 1956 [2] ("the Act") provides a comprehensive framework for the supervision of bank holding companies, companies that control one or more banks. 12 U.S.C. § 1841(a). A primary purpose of the Act is to separate banking from commerce, and the Board is charged with primary responsibility for maintaining that separation. Under the Act, a bank holding company is prohibited from engaging in, or acquiring and retaining "shares of any company" engaged in, nonbanking activities unless the Board determines that such activities are "so closely related to banking ... as to be a proper incident thereto." 12 U.S.C. § 1843(c)(8).

Beginning in 1971, the Board determined that certain types of insurance agency and underwriting activities were "so closely related" to banking that bank holding companies could, consistent with the Act, engage in them. One of these was the sale of any insurance in a community that had a population not exceeding 5,000. In 1979, in response to a decision of the United States Court of Appeals for the Fifth Circuit instructing the Board to support this small town exemption with "further findings which establish the necessary close relationship of banking to general insurance agency activity in towns with populations not exceeding 5,000," *Alabama Association of Insurance Agents v. Board of Governors*, 558 F.2d 729, 731 (5th Cir.1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978), the Board imposed the principal place of business requirement, which limited the small town exemption to bank holding companies that had their principal place of business in a small town. This requirement was satisfied as long as the bank holding company had its principal place of business in any small town; it was not necessary that the principal place of business be in the small town in which the insurance activity was to be conducted. Also in response to the decision of the Fifth Circuit Court of Appeals, the Board required, before a bank holding company could qualify to sell insurance in a small town, that the bank holding company operate another subsidiary serving the public (*e.g.*, a lending office) in the small town in which it wished to sell insurance. These restrictions, when added to the general restriction that insurance could be sold only in the small town or place of fewer than 5,000 residents, were deemed adequate by the Board to satisfy the command of the Fifth Circuit Court of Appeals.

In 1982, Congress enacted the Garn–St Germain Act,[3] in part an effort to define the contours of the closely related test as it pertained to insurance activities. In relevant part, this Act defined insurance activity as not closely related to banking (and thus not a proper activity for bank holding

---

2. Pub.L. No. 84–511, 84–511, 70 Stat. 133 (1956) (codified as amended at 12 U.S.C. §§ 1841–1850).

3. Pub.L. No. 97–320, 96 Stat. 1469 (1982). Section 601 of this Act contains the relevant amendment to the Bank Holding Company Act. Pub. L. No. 97–320, § 601, 96 Stat. 1536–38 (codified at 12 U.S.C. § 1843(c)(8)).

companies and their subsidiaries), but specified seven exemptions to this general prohibition, thereby permitting bank holding companies and their subsidiaries to engage in insurance activities fitting within the exemptions.[4] The two exemptions relevant to our review are exemptions C and D. Exemption C allows the Board to determine that "any insurance agency activity in a place that (i) has a population not exceeding five thousand" is closely related to banking. 12 U.S.C. § 1843(c)(8)(C).[5] Exemption D grandfathers "insurance agency activity which was engaged in by the bank holding company or any of its subsidiaries on May 1, 1982." 12 U.S.C. § 1843(c)(8)(D).[6]

Following enactment of the Garn–St Germain Act, the Board conducted rulemaking proceedings to implement the seven exemptions listed in § 1843(c)(8). Noting that exemption C did not contain the principal place of business requirement previously used by the Board to limit the scope of its small town exemption, the Board solicited comments on the advisability of retaining or deleting this requirement. After reviewing the comments submitted, the Board determined that the principal place of business requirement was not necessary to effectuate the purposes of the Act and deleted it from the new regulations. 12 C.F.R. § 225.25(b)(8)(iii) (1987). The Board determined that requiring the bank holding company to maintain a lending office in the small town in which it desired to sell insurance and the restriction that insurance could be sold only in the small town or place of fewer than 5,000 residents insured that the necessary nexus existed between banking and general insurance activity in small towns so as to satisfy the closely related test of the Act. On the other hand, the Board determined that the effect of the principal place of business requirement was to arbitrarily limit which bank holding companies could engage in insurance activities in small towns primarily by reference to the size of the bank holding company, a result determined by the Board not to be

---

4. *See* 12 U.S.C. § 1843(c)(8). This subsection allows bank holding companies to own shares in companies engaging in nonbanking activity determined by the Board "to be so closely related to banking ... as to be a proper incident thereto." The Garn–St Germain Act amended this subsection by providing that "but for purposes of this subsection it is not closely related to banking ... for a bank holding company to provide insurance as a principal, agent, or broker except [exemptions A through G]." *Id.* The text of exemptions C and D are reproduced in footnotes 5 and 6 *infra,* respectively. Thus, if an insurance activity falls within one of the exemptions, it is not subject to the Garn–St Germain mandate that it cannot be determined to be "closely related" to banking, and the Board may determine such activity to be closely related to banking.

5. The full text of exemption C reads:
(C) any insurance agency activity in a place that (i) has a population not exceeding five thousand (as shown by the last preceding decennial census), or (ii) the bank holding company, after notice and opportunity for a hearing, demonstrates has inadequate insurance agency facilities;
12 U.S.C. § 1843(c)(8)(C).

6. The full text of exemption D reads:
(D) any insurance agency activity which was engaged in by the bank holding company or any of its subsidiaries on May 1, 1982, or which the Board approved for such company or any of its subsidiaries on or before May 1, 1982, including (i) sales of insurance at new locations of the same bank holding company or the same subsidiary or subsidiaries with respect to which insurance was sold on May 1, 1982, or approved to be sold on or before May 1, 1982, if such new locations are confined to the State in which the principal place of business of the bank holding company is located, any State or States immediately adjacent to such State, and any State or States in which insurance activities were conducted by the bank holding company or any of its subsidiaries on May 1, 1982, or were approved to be conducted by the bank holding company or any of its subsidiaries on or before May 1, 1982, and (ii) sales of insurance coverages which may become available after May 1, 1982, so long as those coverages insure against the same types of risks as, or are otherwise functionally equivalent to, coverages sold on May 1, 1982, or approved to be sold on or before May 1, 1982 (for purposes of this subparagraph, activities engaged in or approved by the Board on May 1, 1982, shall include activities carried on subsequent to that date as the result of an application to engage in such activities pending on May 1, 1982, and approved subsequent to that date or of the acquisition by such company pursuant to a binding written contract entered into on or before May 1, 1982, of another company engaged in such activities at the time of the acquisition);
12 U.S.C. § 1843(c)(8)(D).

mandated by the Act's language, structure, or purposes.

The exemption D regulation closely tracks the language of the statute.[7] Two footnotes to the regulation discuss the applicability of the exemption to situations involving mergers, prior applications to engage in insurance activities, and prior contracts of sale of companies engaged in grandfathered insurance activities. 12 C.F.R. § 225.25(b)(8)(iv) nn. 10–11 (1987).[8] Although Petitioners do not challenge the interpretation of the exemption as set forth in these two footnotes, they claim, relying in part on these footnotes, that the Board has concluded that the regulation allows "transfers" of exemption D rights when a company having such rights is acquired by another, an impermissibly broad interpretation of statutory exemption D according to Petitioners. The Board, however, points out that it expressly reserved judgment on how exemption D rights are affected by the acquisition of a company engaged in grandfathered insurance activity.

### DISCUSSION

A. Small Town Exemption and the Principal Place of Business Requirement.

■ As indicated, the language of statutory exemption C does not contain a princi-

pal place of business requirement. By its structure and terms, the statute allows the Board to determine that "any insurance agency activity in a place that has a population not exceeding 5,000" is "closely related" to banking. 12 U.S.C. § 1843(c)(8). The only relevant restrictions exemption C places on the Board relate to the population limit and geographic considerations; in all other respects it leaves to the Board, by applying its expertise, the task of determining whether and under what conditions such general insurance activity is "closely related" to banking. Nowhere in the statute is reference made to the principal place of business requirement. In the face of this unambiguous language (and notable omission), Petitioners nevertheless argue that Congress "clearly" intended to codify the principal place of business exemption. We are unable to discern such an intention.

Petitioners urge us to resort to sparse and somewhat confusing legislative history to discern Congress's "clear" intent. Resort to legislative history here would be neither helpful nor proper.[9] The literal language of the statute unambiguously leaves with the Board the authority to exercise its discretion to determine whether and under what conditions general insurance activity

---

**7.** 12 C.F.R. § 225.25(b)(8)(iv) (1987). The text of exemption D is set out *supra* note 6.

**8.** These footnotes provide:
> 10. Nothing contained in this provision shall preclude a bank holding company subsidiary that is authorized to engage in a specific insurance agency activity under this clause from continuing to engage in the particular activity after merger with an affiliate, if the merger is for legitimate business purposes and prior notice has been provided to the Board.
> 11. For purposes of this paragraph, activities engaged in on May 1, 1982, include activities carried on subsequently as the result of an application to engage in such activities pending before the Board on May 1, 1982, and approved subsequently by the Board or as the result of the acquisition by such company pursuant to a binding written contract entered into on or before May 1, 1982, of another company engaged in such activities at the time of acquisition.

12 C.F.R. § 225.25(b)(8)(iv) nn. 10–11 (1987).

**9.** The legislative history relied upon by Petitioners is ambiguous at best. While it does state

that exemption C was intended "to conform" to the then-current regulatory practice imposing the principal place of business requirement, in the same sentence it informs us that the exemption is intended to conform to "the authority in the National Bank Act (12 U.S.C. 92) permitting national banks to engage in general insurance activities in communities of 5,000 or less." S.Rep. No. 536, 97th Cong., 2d Sess. 38 (1982), U.S. Code Cong. & Admin.News 1982, pp. 3054, 3092. The authority in the National Bank Act does not contain a principal place of business requirement; national banks headquartered in large cities may engage in general insurance activities in small towns as long as they maintain a local branch in the small town. 12 C.F.R. § 7.7100 (1987).

In effect, then, Petitioners urge us to use ambiguous legislative history to create an ambiguity in otherwise unambiguous statutory language. This is clearly improper. "It is elementary in the law of statutory construction that, absent ambiguity or unreasonable result, the literal language of a statute controls and resort to legislative history is not only unnecessary but improper." *Eagle–Picher Indus. v. EPA,* 759

in a small town is closely related to banking. This is not an unreasonable result, and must therefore control over any purportedly contradictory statement made in the legislative history. *See Eagle–Picher Industries v. EPA,* 759 F.2d 922, 928–30 (D.C.Cir.1985). We therefore refuse to write into the statute a principal place of business requirement, which would constrain the Board's discretion, when Congress did not. *See International Brotherhood of Electrical Workers, Local Union 474 v. NLRB,* 814 F.2d 697 (D.C.Cir.1987) (NLRB's reliance on legislative history to interpret statute as restricting its discretion erroneous); *Eagle–Picher Industries,* 759 F.2d at 928–30.

Because the principal place of business requirement is not mandated by the Act, the issue is simply whether the Board reasonably exercised its discretion when it deleted the requirement. We hold that the Board's exercise of discretion was reasonable.

The purpose and effect of the regulation implementing exemption C is to define when general insurance activity in a small town is "closely related" to banking. The Board's determination that a particular nonbanking activity is closely related to banking is entitled to deference. *Securities Industry Association v. Board of Governors,* 468 U.S. 207, 104 S.Ct. 3003, 82 L.Ed.2d 158 (1984); *Association of Data Processing, Inc. v. Board of Governors,* 745 F.2d 677 (D.C.Cir.1984). The Board appropriately considered that the historical practice of national banks providing insurance agency services in small towns was a strong indicator of whether an activity is closely related to banking. *See Association of Data Processing,* 745 F.2d at 686. The Board strengthened this parallel by requiring the bank holding companies seeking to sell insurance in a small town to maintain a lending office in that small town. Its determination that this additional requirement insured that the closely re-

lated test was satisfied, without a principal place of business requirement, was reasonable, in light of the Garn–St Germain Act's failure to mention such a requirement. Furthermore, the Board provided a reasoned explanation as to why it determined that the principal place of business requirement was not necessary to effectuate the purposes of the Act, but instead simply shifted the focus of exemption C from the size of the town served to the size of the bank holding company providing the service. The record indicates that the Board's determination that general insurance activity in small towns is closely related to banking, as limited by the regulation, is nothing more than an example of the Board applying its expertise to a matter entrusted to it by Congress. Its determination is reasonable, and we defer to that judgment.

**B. Grandfather Rights Upon Acquisition.**

■ We can quickly dispose of Petitioners' challenge to the Board's regulation implementing statutory exemption D. 12 C.F.R. § 225.25(b)(8)(iv) (1987). Petitioners assume a broad interpretation of the regulation, an interpretation never adopted or applied by the Board, and then challenge the regulation as an overly expansive interpretation of exemption D. In effect, Petitioners challenge their own interpretation of the regulation, not the Board's. Our function, however, is limited to reviewing final actions of the Board properly presented for review, not deciding abstract questions of law raised by interested parties seeking to restrict the Board's discretion prematurely. We decline, therefore, Petitioners' invitation to pass judgment on whether their interpretation of 12 C.F.R. § 225.25(b)(8)(iv) improperly expands the scope of exemption D (obviously it cannot); we await final action of the Board on the issue of transferability of grandfather rights upon acquisition of grandfathered entities.[10] Petitioners' exemption D chal-

F.2d 922, 929 n. 11 (D.C.Cir.1985) (quoting *Montgomery Charter Serv., Inc. v. Washington Metropolitan Area Transit Comm'n,* 325 F.2d 230, 233 (D.C.Cir.1963)) (quoting *Elm City*

*Broadcasting Corp. v. United States,* 235 F.2d 811, 816 (D.C.Cir.1956)).

**10.** The Court notes that the Board has recently issued two orders addressing the acquisition issue in applications to retain insurance agency

lenge is therefore dismissed on grounds of ripeness.

### CONCLUSION

The Board had discretion to delete the principal place of business requirement when it amended 12 C.F.R. § 225 (Regulation Y) (1987), because Congress did not mandate its retention. The Board's decision to drop the requirement as part of the closely related test was a proper exercise of discretion. Petitioners' challenge to 12 C.F.R. § 225.25(b)(8)(iv), implementing exemption D is not ripe for review. We therefore affirm the Board's regulations under review and deny the petition for review.

It is so Ordered.

---

activities of grandfathered entities upon acquisition by two holding companies. Sovran Financial Corp., 73 Fed. Res. Bull. 672 (June 29, 1987), *reprinted in* Joint Appendix 173; MNC Financial Corp., 73 Fed. Res. Bull. 740 (July 2, 1987), *reprinted in* Joint Appendix 200. Petitions for review of the Sovran Financial Corp. order are currently pending in this Court under docket numbers 87–1354 and 87–1355. The Board, in approving the applications to retain insurance agency activities, adopted a much narrower interpretation of the regulation than Petitioners', holding that exemption D rights are not extinguished when a grandfathered company is acquired by another company, so long as it is only the grandfathered subsidiary that conducts the exemption D activity. *Sovran,* 73 Fed. Res. Bull. at 676–77, Joint Appendix at 189–94; *MNC,* 73 Fed. Res. Bull. at 741, Joint Appendix at 204–05. On review of the *Sovran* order, Petitioners are free to attempt to challenge this narrow interpretation and application of the regulation. Petitioners are concerned, however, that a party to the *Sovran* order may object to their standing to challenge the order. Be that as it may, we hardly consider the possibility that Petitioners may be denied standing in *Sovran,* a discrete final action of the Board taken in a concrete factual context, as justification for deciding an abstract issue of law not properly presented for our review.