**UNITED STATES of America, Plaintiff,**

v.

**Robert BAD HORSE, Defendant.**

**No. CR 97–30061 1997 DSD 39.**

United States District Court,
D. South Dakota,
Central Division.

Jan. 5, 1998.

Mara M. Kohn, Asst. U.S. Atty., Pierre, SD, for Plaintiff.

John L. Brown, Riter, Mayer, Hofer, Wattier & Brown, Pierre, SD, for Defendant.

## ORDER

KORNMANN, District Judge.

[¶ 1] The defendant, on September 23, 1997, was convicted of Hostage Taking in violation of 18 U.S.C. § 1203, Kidnapping in violation of 18 U.S.C. § 1201(a)(2), and Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3). The defendant filed a Motion for Acquittal or, in the alternative, a Motion for New Trial, Doc. 31. The defendant filed a brief in support of these motions, Doc. 32, and a supplemental brief in support of the motions, Doc. 36. The plaintiff filed a response to the defendant's motions, Doc. 35. The defendant, *pro se*, wrote a letter to the Court dated December 25, 1997, moving to dismiss the hostage taking and kidnapping charges, the motion being based on alleged

prosecutorial misconduct, the claim being that Ms. Kohn should not have argued to the jury that the failure of the police and jail officials to search the defendant after his initial arrest in connection with a domestic dispute and before placing him in a cell was irrelevant. He was not searched and was allowed to enter the jail and was placed in a locked cell with two other prisoners (who were also highly intoxicated) while he had a knife on his person and while he was highly intoxicated.

[¶ 2] Fed.R.Crim.P. 33 provides in part that the "court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 29(c) provides in part that "If a verdict of guilty is returned the court may on ... motion set aside the verdict and enter judgment of acquittal." Both rules require that the motion be made within seven days after the finding of guilt. The time limits of Rule 33 are jurisdiction. *United States v. Beran,* 546 F.2d 1316, 1319 n. 1 (8th Cir. 1976). The motion was timely filed and, therefore, this Court has jurisdiction.

■ [¶ 3] As to the pro se motion, the same is untimely and will be denied. It is also denied because it is totally lacking in merit. There was no misconduct of the prosecutor and, as to the offenses for which defendant was convicted, the failure to search him and to discover the knife (which he ultimately used in the assault in the jail) does not constitute a legal defense or excuse. The failure may be relevant and will be considered by the Court at sentencing.

[¶ 4] The defendant's Motion for Acquittal alleges that Counts I and II of the indictment were multiplicitous and, therefore, the defendant was subjected to double jeopardy. Doc. 31 at 2. The Eighth Circuit uses a two-part test to determine if a defendant has been subjected to double jeopardy. *U.S. v. Bennett,* 44 F.3d 1364, 1373 (8th Cir.1995) (citing *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)). First, a court must ask whether Congress 'intended that each violation be a separate offense.' If it did not, there is no statutory basis for the two prosecutions, and the double jeopardy inquiry is at an end. *Bennett,* 44 F.3d at 1373 (citing *Garrett,* 471 U.S. at 778, 105 S.Ct. at 2411). *See also U.S.*

*v. Christner,* 66 F.3d 922, 927 (8th Cir.1995) (stating that the Court must, from all the data available, ascertain the legislative intent to determine if there is multiplicity) (citing 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469, 477–78 (1982)). Thus, the question is whether Congress intended that a single incident in one location, albeit continuing for more than one hour, of restraining, slightly injuring, and threatening a fellow prisoner (who was a friend of the defendant) while making demands on Bureau of Indian Affairs police officers is to result in three extremely serious federal prosecutions and convictions only in Indian Country but not generally elsewhere. This Court finds that Congress did not so intend.

[¶ 5] The Hostage Taking Act, 18 U.S.C. § 1203, was "adopted specifically 'to extend jurisdiction over extraterritorial crimes and satisfy the country's obligations as a party to various international conventions.' " *United States v. Carrion–Caliz,* 944 F.2d 220, 223 (5th Cir.1991) (citing *United States v. Yunis,* 681 F.Supp. 896, 904 (D.D.C.1988)). The *Yunis* court states that "the very purpose behind the Hostage Taking Statute was to 'demonstrate to other governments and international forums that the United States is serious about its efforts to deal with international terrorism.' " *Yunis* at 905 (citing *President's Message to Congress on the International Convention Against the Taking of Hostages,* 20 Weekly Comp.Pres.Doc. 590, 592 (April 26, 1984)). *See also* 130 Cong.Rec. S10,700–01 (daily ed. May 2, 1984); 130 Cong.Rec. S31,948–49 (daily ed. Oct. 11, 1984); 1984 U.S.C.C.A.N. 3710. This statute is another example of Congress enacting laws which may result in discriminatory treatment of Native Americans without Congress ever considering or intending such a result. The Congressional intent of the hostage taking statute could not reasonably have been to subject, in general, only citizens in Indian Country to prosecutions and convictions for kidnapping as well as hostage taking (to say nothing of assault with a dangerous weapon) under the facts of this case. There is nothing in the legislative history to indicate that Congress intended, in effect, to single out Native Americans for such multiple prosecutions. We know, for example,

that a person confined in a county jail in Aberdeen, SD, who acted in a manner similar to defendant could not be prosecuted for hostage taking. In general, only in Indian Country may a Native American be convicted of the federal crime of kidnapping without transporting a victim across a state line.

[¶ 6] The plaintiff claims that the intent of Congress in enacting the Hostage Taking Act is irrelevant as it pertains to this case. Doc. 35 at 2. The government relies on *U.S. v. Lin*, which cites the *Yunis* case, which held that the literal language of the statute takes precedence over the legislative intent absent any ambiguity or unreasonable results. *Id.* The *Lin* case, however, can be distinguished from the instant case. In *Lin*, the defendant was convicted of hostage taking and two firearms offenses but, unlike the defendant in the instant case, was not also convicted of kidnapping. *U.S. v. Lin*, 101 F.3d 760, 763 (D.C.Cir.1996). In addition, the *Lin* case involved defendants and victims who were not United States nationals. *Id.* 101 F.3d at 765. The court in *Lin* was not faced with the question of whether convicting a defendant under the facts of this case of both hostage taking and kidnapping for the same act produces unreasonable results, as this Court is. The *Lin* court merely applied the plain language of the statute, which expressly punishes the taking of hostages when non-nationals of the United States are involved. *Id.* As previously stated, this comports with the intent of Congress in enacting the statute.

[¶ 7] The plaintiff also relies on *U.S. v. Pacheco*, 902 F.Supp. 469 (S.D.N.Y.1995), in claiming that legislative intent is irrelevant to the instant case. Doc. 35 at 2. *Pacheco* can also be distinguished from the instant case. Like the defendant in *Lin*, and unlike the defendant in the instant case, the defendant in *Pacheco* was charged with hostage taking but not kidnapping. 902 F.Supp. at 471. Also, as in *Lin*, *Pacheco* involved a victim and a co-defendant, neither of whom were nationals of the United States. *Id.* The *Pacheco* court was thus concerned with a hostage taking with international aspects. This is completely different from the instant case, which involves two Native Americans in a local jail in Lower Brule, SD. The court in the *Pacheco* case also recognized that the

legislative history of the Hostage Taking Act indicates that it was passed "to address legitimate foreign policy concerns." *Id.* 902 F.Supp. at 472.

▮ [¶ 8] A reading of the plain language of the entire Hostage Taking Act indicates that it is highly unlikely that Congress intended it to apply to Native Americans acting on an Indian reservation to threaten local authorities. The statute states, in relevant part,

> It is not an offense under this section if the conduct required for the offense occurred inside the United States, each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in the United States, *unless the governmental organization sought to be compelled is the Government of the United States.*

18 U.S.C. § 1203(b)(2). (Emphasis added). Each of the first three exceptions set forth above are met in this case. Thus, the only reason the defendant was charged with this hostage taking is because the entity he sought to compel to release him or to bring his female friend to the jail was the tribal police department, which in this case happens to be a law enforcement arm of the Bureau of Indian Affairs, United States Department of the Interior. Only because this particular Tribe had entered into a contract with the B.I.A. did the tribal police department become an arm of the federal government. This Court finds that Congress did not include the statutory language recited above with the intent to punish a Native American who takes another Native American hostage on the reservation and threatens the local tribal police.

▮ [¶ 9] It would be an act of great injustice to permit this defendant to be convicted of not only kidnapping and assault with a dangerous weapon but also hostage taking. There is no ambiguity in the statute but an "unreasonable result" would be produced and thus legislative history may be considered. *Eagle–Picher Industries, Inc. v. E.P.A.*, 759 F.2d 922, 929, n. 11 (D.C.Cir. 1985) (quoting *Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission*, 325 F.2d 230, 233 (D.C.Cir.

1963)). Enough is enough. It is important to note that no criticism is intended or implied as to the U.S. Attorney's office. They are free, of course, to charge as they see fit. This case should not have been tried, given the overwhelming evidence of guilt of the defendant as to the crimes of kidnapping and assault with a dangerous weapon.

[¶ 10] This Court has wide discretion in deciding whether the interest of justice mandates a new trial. *U.S. v. Van Kirk,* 935 F.2d 932, 935 (8th Cir.1991) (McMillian, Justice, dissenting) (citing *U.S. v. Offutt,* 736 F.2d 1199, 1202 (8th Cir.1984)). This matter was tried by a jury before this Court and the Court is very familiar with the evidence. The evidence adduced at trial was clearly sufficient to sustain the conviction for kidnapping, as well as assault with a dangerous weapon. A new trial will not be ordered.

[¶ 11] Pursuant to Fed.R.Crim.P. 29(d), if this judgment of acquittal is hereafter vacated or reversed, any motion for a new trial should be denied. Should this judgment be vacated or reversed, the conviction as to Count I shall be reinstated.

[¶ 12] IT IS ORDERED:

(1) The defendant's Motion for Acquittal is granted as to Count I only.

(2) The defendant's Motion for New Trial is denied.