El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El 15 de noviembre de 2005 la delegación de la mayoría de la Cámara de Representantes de Puerto Rico presentó el Proyecto de la Cámara 2193 (Proyecto) con el objetivo de establecer la Ley de Justicia Contributiva de 2006. Mediante éste, como paso inicial hacia una reforma contributiva de gran justicia social, se pretendía establecer un impuesto sobre ventas, uso y almacenamiento a una tasa contributiva de 7%. A esos efectos, el referido Proyecto disponía:
Sección 7003 — Limitación para Fijar Impuestos
Ningún municipio o división política o administrativa del Gobierno del Estado Libre Asociado de Puerto Rico, podrá imponer o recaudar ningún arbitrio o impuesto de venta local sobre cualquier artículo de propiedad mueble tangible sujeto al pago *464 de impuestos bajo las disposiciones de este Subtítulo. Se ex-ceptúa de esta disposición leal [sic] impuesto sobre el volumen de negocio autorizado por la Ley Núm. 113 de 10 de julio de 1974, según enmendada, conocida como “Ley de Patentes Municipales”, cuya imposición por los municipios queda expresamente autorizada, debiendo incluirse en el volumen de negocios las operaciones mercantiles sobre los artículos gravados por este Subtítulo, sin que dicho volumen de negocios sea incrementado por el importe del impuesto general a las ventas, uso y consumo. No obstante, cuando la aplicación de la Ley de Patentes Municipales, conjuntamente con la aplicación de este Subtítulo produzca una situación contributiva insostenible por infringir alguna prohibición constitucional, si dicha imposición fuere sostenible mediante la imposición y cobro de uno solo de los impuestos, prevalecerá el impuesto fijado en este subtítulo.
CAPITULO II — IMPUESTOS SOBRE VENTAS AL DETAL Sección 7005 — Impuestos sobre ventas, uso y almacenamiento
(a) Se impondrá, cobrará, y pagará, a los tipos prescritos [en] esta sección un impuesto sobre toda transacción de venta al detal, incluyendo las órdenes por correo, o transacción unitaria de propiedad mueble tangible o servicios tributables, admisiones, su almacenaje, uso o consumo en Puerto Rico y dicho impuesto se pagará una sola vez, en el tiempo y en la forma especificadas en el Capítulo V de este Subtítulo. ...
(1) Cada unidad o artículo de propiedad mueble tangible que se venda al detal en Puerto Rico tributará a una tasa de 7% del precio de venta.
(2) Cada artículo de propiedad mueble tangible, cuando el mismo no se venda pero se use, consuma o almacene para su uso o consumo en Puerto Rico tributará a una tasa de 7% del precio de compra.
(3) Cada persona, natural o jurídica, que efectúe pagos a otra persona por concepto de servicios tributables prestados en o fuera de Puerto Rico, según éstos se definen en este Subtítulo, tributará a una tasa de 7% del precio de venta. (Énfasis suplido.) Apéndice, pág. 222.
Una vez presentado el Proyecto, éste se refirió a la Comisión de Hacienda y Asuntos Financieros de la Cámara de Representantes (Comisión) para su análisis e informe. Luego de celebradas las vistas públicas correspondientes, *465 (1) el 20 de junio de 2006 la Comisión presentó su informe. En éste recomendó la aprobación sin enmiendas de un Sustitutivo del Proyecto de la Cámara 2193 (Proyecto Sustitutivo). Dicho Proyecto Sustitutivo —hoy convertido en ley(2)— en lo pertinente, dispone que:
SUBTITULO BB — IMPUESTO SOBRE VENTAS Y USO CAPITULO 2 — IMPOSICION, COBRO Y PERSONA RESPONSABLE
Sección 2401 — Impuesto sobre Ventas
(a) Se impondrá, cobrará, y pagará, a los tipos establecidos en esta sección, un impuesto sobre toda transacción de venta de ima partida tributable en Puerto Rico. La aplicación del impuesto estará sujeta a las exenciones concedidas en el Capítulo 3 de este Subtítulo.
(b) La tasa contributiva será de un cinco punto cinco (5.5%) por ciento del precio de venta de la partida tributable y de transacciones combinadas.
Sección 2402 — Impuesto sobre Uso
(a) Se impondrá, cobrará, y pagará, a los tipos establecidos en esta sección, un impuesto sobre uso, almacenaje o consumo de una partida tributable en Puerto Rico.
(b) La tasa contributiva será de un cinco punto cinco (5.5%) del precio de compra de la partida tributable.
Sección 2410 — Limitación para Fijar Impuestos
Excepto según se dispone en la Sección 6189, ningún municipio, autónomo o no, del Estado Libre Asociado de Puerto Rico, podrá imponer o recaudar arbitrio o impuesto alguno sobre artículos, servicios, partidas tributables o transacciones que estén sujetos o eximidos del impuesto sobre ventas y uso establecido en este Subtítulo, según establecido en la Sección 6188 del Subtítulo F.
SÚBCAPÍTULO B — REGULACIÓN DE LAS DISPOSICIO-NES RELACIONADAS A REPRESENTANTES CONTRIBU-TIVOS ANTE EL DEPARTAMENTO
Sección 6188 — Limitación para Fijar Impuestos
Excepto según se dispone a continuación o en la Sección *466 6189, ningún municipio, autónomo o no, del Estado Libre Asociado de Puerto Rico, podrá imponer o recaudar ninguna contribución o impuesto establecido en este Código. Se exceptúan de esta disposición los arbitrios de construcción y el impuesto sobre el volumen de negocio autorizados por la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como “Ley de Municipios Autónomos” y la Ley Núm. 113 de 10 de julio de 1974, según enmendada, conocida como Ley de Patentes Municipales, respectivamente, cuya imposición por los municipios queda expresamente autorizada. No obstante, cuando la aplicación de la Ley de Municipios Autónomos y la Ley de Patentes Municipales, conjuntamente con la aplicación de este Código produzca una situación contributiva insostenible por infringir alguna prohibición constitucional, si dicha situación fuere sostenible mediante la imposición y cobro de una sola de las contribuciones o impuestos, prevalecerá la contribución o el impuesto fijado en este Código.
Sección 6189 — Imposición Municipal de Impuesto de Ventas y Uso al Detal
A. Se autoriza a los Municipios a imponer un impuesto sobre ventas y uso al detal de conformidad con la autorización establecida en la Sección 2410. Dicha contribución será por una tasa contributiva de un uno punto cinco (1.5%) por ciento, a ser impuesta de conformidad con la misma base, exenciones y limitaciones contenidas en el Subtitulo BB del Código, excepto que tributaran [sic] sobre todos los alimentos, a ser establecida e impuesta de manera uniforme por todos los municipios de Puerto Rico mediante Ordenanza Municipal al efecto. Así mismo se tomaran [sic] también en cuenta las áreas de campo acopado [sic] Federal como otra excepción autorizada.
La tasa del impuesto municipal de uno punto cinco por ciento (1.5%) se distribuirá en forma proporcional de la siguiente manera:
i. una tasa de uno punto dos por ciento (1.2%) para el municipio
ii. una tasa de punto uno por ciento (.1%) para el Fondo de Mejoras Municipales
iii. una tasa de punto dos por ciento (.2%) como urna aportación Municipal al Fondo General para alivios contributivos a individuos .... (Énfasis suplido.) Proyecto Sustitutivo, Apéndice, págs. 524-602.
Así las cosas, el 21 de junio de 2006 el Proyecto Sustitutivo fue sometido a la consideración del pleno de la Cámara de Representantes de Puerto Rico (Cámara de Representantes) y éste fue aprobado con 31 votos a favor y 18 en *467 contra.(3) En esa misma fecha, la Cámara de Representantes envió al Senado de Puerto Rico (Senado) el texto de aprobación final del Proyecto Sustitutivo, y el 25 de junio de 2006 éste fue aprobado por el Senado —sin enmiendas— con 23 votos a favor y 2 en contra.(4)
Concluida la votación previamente señalada, surgieron diferencias, de conocimiento público, respecto a la tasa contributiva que, en efecto, se impuso mediante la referida pieza legislativa. Mientras que el Gobernador de Puerto Rico, Hon. Aníbal Acevedo Vilá, y el Presidente del Senado, Hon. Kenneth McClintock, entre otros, entendieron que el Proyecto Sustitutivo impone una tasa contributiva total de un 7%, una mayoría de los miembros de la Cámara de Representantes expresaron que, mediante el Proyecto Sustitutivo aprobado se estableció un impuesto a la venta con una tasa contributiva única y total de 5.5%, distribuido en un 4% correspondiente al impuesto estatal y un 1.5% correspondiente al impuesto municipal.(5)
El 4 de julio de 2006 el Gobernador firmó el Proyecto Sustitutivo, según éste fue aprobado por la Cámara de Representantes y el Senado el 21 y 25 de junio de 2006, respectivamente.(6) A partir de ese momento, la Rama Eje *468 cutiva ha tomado todas las medidas necesarias para la imposición del impuesto estatal sobre la venta y el uso a una tasa contributiva de 5.5%, a la cual, a partir del 15 de noviembre de 2006, se le sumará una tasa contributiva de 1.5% correspondiente al impuesto municipal.(7)
Así pues, ante la inminente imposición de un impuesto a la venta y al uso a una tasa contributiva total máxima de 7%, Carlos Romero Barceló y Peter Muller Maldonado, en calidad de contribuyentes afectados, y los demás demandantes, en calidad de contribuyentes y pensionados afectados, presentaron ante el Tribunal de Primera Instancia, Sala de San Juan, una demanda sobre sentencia declaratoria contra el Estado Libre Asociado de Puerto Rico, el Hon. Aníbal Acevedo Vila, Gobernador de Puerto Rico, y el Hon. Juan Carlos Méndez Torres, en su capacidad de Secretario de Hacienda. En ésta impugnaron la interpretación, alegadamente errónea, de que la Rama Ejecutiva pretende poner en efecto una tasa contributiva de 5.5% para el Estado y un 1.5% para los municipios, para un impuesto total máximo sobre ventas y uso de un 7%.
Solicitaron que se le ordenara a los demandados interpretar y cumplir con la Ley de Justicia Contributiva de 2006, en atención a la intención, propósito e historial legislativo de ésta, a saber: el establecimiento de un impuesto sobre ventas y uso con una tasa única y total de un 5.5%, de cuyos recaudos el 4% corresponde al estado y el 1.5% corresponde a los municipios.(8) A su vez, adujeron que la *469 interpretación, alegadamente errónea y tergiversada de la mencionada ley por parte del Presidente del Senado y la Rama Ejecutiva, incide sobre la Sec. 17 del Art. Ill de nuestra Constitución, L.P.R.A., Tomo 1, la cual dispone, en síntesis, que todo proyecto de ley para obtener rentas se originará en la Cámara de Representantes y que el Senado podrá proponer enmiendas o convenir en ellas. Entienden éstos que es contrario al propósito constitucional allí consagrado que el Senado y la Rama Ejecutiva puedan sustituir la intención legislativa de la Cámara de Representantes en un proyecto de esta naturaleza.
Una vez presentada la demanda antes esbozada y expedidos y diligenciados los emplazamientos correspondientes, el 31 de octubre de 2006 los demandantes acudieron ante este Tribunal —mediante un recurso de certificación— aduciendo que la intervención de este Foro es necesaria dado el interés publico que reviste la controversia involucrada.
Le concedimos a las partes hasta el martes 7 de noviembre de 2006 para que se expresaran.(9) En vista de que la controversia planteada en el presente recurso —sobre cuál es la tasa contributiva que en realidad impone la Ley Núm. 117 del 4 de julio de 2006— es de alto interés público, que debe ser resuelta en forma definitiva y sin dilación alguna, ya que su fecha de vigencia es inminente, que dicha controversia no sólo afecta, de manera directa, el presupuesto del consumidor puertorriqueño sino que puede afectar el crédito del Estado Libre Asociado de Puerto Rico y, por ende, el futuro y bienestar de todos los puertorriqueños, avalamos la solicitud de certificación que ante este Tribunal presentaran los demandantes y peticionarios.
Contando con las comparecencias de las partes y las posiciones de la Cámara de Representantes y el Senado res *470 pecto al recurso solicitado, nos encontramos en posición de resolverlo y procedemos a hacerlo.
I
Aun cuando la parte demandada recurrida acepta, en su comparecencia, la legitimación activa de los demandantes y peticionarios y la justiciabilidad de la controversia ante nuestra consideración, es norma reiterada que este Tribunal, como celoso guardián de su jurisdicción, está obligado a considerar, motu proprio o a petición de parte, todo asunto relativo a su jurisdicción, pues no posee discreción de asumirla allí donde no la hay. Morán v. Martí, 165 D.P.R. 356 (2005); A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273 (2002). En consecuencia, y previo a cualquier ulterior análisis, precisa analizar y determinar si, en efecto, las partes y la controversia hoy ante nuestra consideración cumplen con ciertos requisitos de justiciabilidad, criterios indispensables de nuestra jurisdicción.
Sabido es que la jurisdicción de nuestros tribunales se limita a aquellas instancias en que pueda precisarse la existencia de un caso o controversia, pues “los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas”. E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958). En aras de proteger dicho principio, se han desarrollado ciertos criterios de justiciabilidad que demarcan la facultad de los tribunales para entender en un asunto traído ante sí. Entre éstos, la legitimación activa de la parte que promueve el pleito y la madurez de la controversia planteada.
A. Una parte posee legitimación activa si cumple con los siguientes requisitos: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y pre *471 riso, y no abstracto o hipotético; (3) que existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley. Col. Peritos Elec. v. A.E.E., 150 D.P.R. 327 (2000); Asoc. Maestros P.R. v. Srio. Educación, 137 D.P.R. 528 (1994); Hernández Torres v. Gobernador, 129 D.P.R. 824 (1992); Hernández Agosto v. Romero Barceló, 112 D.P.R. 407 (1982); Fund. Arqueológica v. Depto. de la Vivienda, 109 D.P.R. 387 (1980).
Resulta indispensable que el daño alegado sea concreto y particular, pues un daño generalizado que el demandante comparta con el resto de la ciudadanía impide la configuración de su legitimación activa para promover el pleito. Fund. Arqueológica v. Depto. de la Vivienda, ante. Véase, además, Warth v. Seldin, 422 U.S. 490 (1975). Acorde con este requisito, los tribunales carecen de jurisdicción para entender en aquellas reclamaciones en que el promovente, por su mera condición de contribuyente, impugna un gasto del Estado, pues el daño que éste pueda sufrir en calidad de contribuyente es generalizado y compartido con el resto de la ciudadanía. Véase Massachusetts v. Mellon, 262 U.S. 447 (1923).
En Puerto Rico dicha prohibición se encuentra regulada mediante legislación específica. Al respecto, el Art. 3 de la Ley de Pleitos contra el Estado, 32 L.P.R.A. see. 3075, dispone:

3075. Acción del contribuyente, prohibida-Jurisdicción de los tribunales

Ningún tribunal de Puerto Rico tendrá jurisdicción para conocer, o continuar conociendo si se hubiera ya iniciado, bien en primera instancia o en grado de apelación, de ninguna acción o procedimiento en que se impugne la validez o constitucionalidad de cualquier ley o resolución de la Asamblea Legislativa de Puerto Rico o de cualquier actuación de un funcionario público autorizada por ley de la Asamblea Legislativa de Puerto Rico, cuando el demandante no alegue otro interés en la acción o procedimiento, ni otra capacidad para demandar, que la de *472 ser contribuyente o representar a los contribuyentes como clase y que, como tal, sufre o pueda sufrir daños por virtud de dicha ley, resolución o actuación.
No obstante, es de notar que la prohibición del pleito del contribuyente no es absoluta. En 1968 el Tribunal Supremo de Estados Unidos estableció una excepción a la norma y le reconoció legitimación activa al contribuyente que impugne una asignación presupuestaria, por ésta operar en violación a la cláusula de establecimiento de la Primera Enmienda de la Constitución federal. Flast v. Cohen, 392 U.S. 83 (1968). Dicha excepción fue adoptada en nuestra jurisdicción en Asoc. Maestros P.R. v. Srio. Educación, ante, donde se resolvió que la prohibición regulada en la Art. 3 de la Ley de Pleitos contra el Estado, supra, no aplica ante reclamaciones en que un contribuyente impugna gastos públicos, por éstos operar en violación a las cláusulas constitucionales locales contra el establecimiento de una religión y contra el uso de fondos públicos para el sostenimiento de escuelas privadas.
De igual forma, el Tribunal Supremo de Estados Unidos ha reconocido que un contribuyente tiene legitimación activa para impugnar una ley contributiva que determina su propia responsabilidad como contribuyente. Véase Bacchus Imports, LTD. v. Dias, 468 U.S. 263 (1984). A esos efectos, Laurence H. Tribe expone:
The doctrines limiting taxpayer standing furnish another example of the policy against the assertion of generalized grievances. A taxpayer of course has standing to challenge the validity or application of a taxing statute in determining his or her own tax obligation. Less obviously, perhaps, an individual may have a sufficient interest, in his or her capacity as a taxpayer, to challenge spending programs of the taxing government, on the theory —or, more candidly, the fiction— that a successful suit against such a program can result in some decrease in the litigant’s taxes. (Escolios y énfasis omitidos, y énfasis suplido.) L.H. Tribe, American Constitutional Law, 3ra ed., Nueva York, Ed. Foundation Press, 2000, Yol. 1, pág. 421.
*473 A su vez, el Prof. Raúl Serrano Geyls nos ilustra:
La acción del contribuyente —una forma de la “acción pública”— tiene dos vertientes. Primero, aquélla en la cual el ciudadano cuestiona su obligación de pagar o el monto de su aportación contributiva en un pleito para obtener reembolso fundado en alegadas infracciones de ley o de constitución. Segundo, aquélla en la cual la persona impugna un acto del gobierno como inconstitucional y alega, como razón para probar su interés de litigante, que él contribuye, mediante el pago de impuestos, al sostenimiento económico del acto alegadamente inconstitucional. En ese caso, el ciudadano litiga como uno de miles de contribuyentes que aportan una suma al Tesoro Público, del cual sale el dinero que se utiliza para ese gasto calificado como inconstitucional. En esa acción el litigante no sufre daño directo personal, ya que gane o pierda no se le reducirá ni se le devolverá su contribución. R.S. Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. P.R., 1986, Vol. 1, pág. 132.
En el presente caso, todos los demandantes impugnan la pieza legislativa en cuestión en calidad de contribuyentes afectados.(10) La pieza legislativa que impugnan, sin duda alguna, determina la responsabilidad de éstos como contribuyentes. Ello implica que bajo la doctrina establecida en Bacchus Imports, LTD. v. Dias, ante, y avalada por los tratadistas previamente citados, los demandantes en cuestión poseen legitimación activa para impugnar la Ley de Justicia Contributiva de 2006, según ésta ha sido interpretada por la Rama Ejecutiva.
En el pasado, hemos sido flexibles al interpretar los requisitos sobre legitimación activa. Asoc. de Maestros v. Srio. de Educación, 156 D.P.R. 754 (2002); Col. Ópticos de P.R. v. Vani Visual Center, 124 D.P.R. 559 (1989). Hoy *474 damos ejemplo de ello y avalamos en nuestra jurisdicción la legitimación activa de un contribuyente para impugnar una ley contributiva que determina su responsabilidad en tal carácter. A diferencia de otros casos en que se les ha negado legitimación activa a los contribuyentes, aquí los demandantes no impugnan un gasto del Estado o una asignación presupuestaria. Todo lo contrario. Los aquí demandantes impugnan una pieza legislativa impositiva de una contribución, y la interpretación que finalmente se le brinde a ésta incide de modo definitivo sobre la responsabilidad contributiva de éstos. En ello, precisamente, recae el daño real y concreto requerido.
De ser ciertas las alegaciones esbozadas en la demanda, y no reconocer la jurisdicción de este Tribunal por falta de legitimación activa, éstos estarán obligados a asumir el pago de un impuesto sobre la venta y el uso a una tasa contributiva alegadamente distinta a la realmente impuesta por el legislador. Es para estas circunstancias particulares que se ha reconocido la facultad de los tribunales de interpretar los estatutos aprobados por la Asamblea Legislativa.
Negarles legitimación activa a los demandantes en calidad de contribuyentes, ante las circunstancias particulares del presente caso, sería abdicar nuestra función de máximo intérprete de los estatutos sin justificación de envergadura que nos obligue a decretar nuestra falta de jurisdicción. Resolver lo contrario implicaría, incluso, avalar la inimpugnabilidad de estatutos de esta naturaleza, pues aquellos a quienes más afectan, entiéndase los contribuyentes, no tendrían legitimación para impugnarlas.(11)
Confirmada la legitimación activa de los demandantes y peticionarios, pasamos a analizar y determinar la madurez de la presente controversia.
*475 B. Sabido es que la presentación prematura de una acción también incide sobre la jurisdicción de los tribunales. La madurez se enfoca en la proximidad temporal o inminencia del daño alegado y debe examinarse mediante un análisis dual: si la controversia sustantiva es apropiada para resolución judicial y si el daño es suficiente para requerir adjudicación. “El factor determinante es que la controversia esté definida concretamente de manera que el tribunal pueda evaluarla en sus méritos.” Rexach v. Ramírez, 162 D.P.R. 130, 142 (2004). “Todo lo que se necesita para asegurar que un caso está maduro es que el evento contemplado ... con toda probabilidad va a ocurrir.” Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 723 (1980).
El criterio de “madurez” no implica que una parte deba esperar a que un estatuto aprobado entre en vigencia para impugnarlo. A esos efectos, nuestro ordenamiento ostenta, como mecanismo remedial, la sentencia declaratoria. Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III. “La sentencia declaratoria es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente.” (Enfasis suplido.) Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R. 360, 383-384 (2002).
La persona que presenta una solicitud de sentencia declaratoria se encuentra a su vez sujeta al cumplimiento de los criterios de legitimación activa, por lo cual, deberá establecer la existencia o inminencia de un daño claro y real. Sánchez et al. v. Srio. de Justicia et al., ante. La aprobación del estatuto y su eventual vigencia debe ser definitiva, de lo contrario la causa de acción presentada para impugnarlo no estará madura; ello por no presentar una controversia real de naturaleza justiciable que requiera un pronunciamiento judicial. Véase Asoc. Guardias Penales v. Srio. de Justicia, 87 D.P.R. 711 (1963). Impugnada oportunamente la interpretación de un estatuto me *476 diante un recurso de sentencia declaratoria y establecida la legitimación activa del promo vente, la función del tribunal se remite a su alcance e interpretación. P.P.D. v. Gobernador, 111 D.P.R. 8 (1981).
Una vez analizados los criterios antes esbozados, opinamos que la presente controversia se encuentra madura para la correspondiente adjudicación judicial mediante el mecanismo de sentencia declaratoria. Es de conocimiento público que la Rama Ejecutiva ha tomado las medidas necesarias para la imposición de un impuesto estatal a una tasa contributiva de un 5.5%, la cual a partir del 15 de noviembre de 2006 se unirá a una tasa contributiva de 1.5% correspondiente al impuesto municipal. La reglamentación necesaria por parte del Departamento de Hacienda ya ha sido aprobada. Sólo resta la llegada de la fecha de vigencia de la Ley de la Justicia Contributiva de 2006, a saber, el 15 de noviembre de 2006, para que ésta entre en vigor, según ha sido interpretada por la Rama Ejecutiva. Tanto la aprobación como la vigencia de la mencionada pieza legislativa es definitiva y su inminente aplicación reviste de concreción y de madurez a la reclamación presentada por los demandantes y peticionarios. Ello, unido a la legitimación activa previamente reconocida, nos permite dedicarnos, de lleno, a la interpretación de la Ley de la Justicia Contributiva de 2006.
II
El Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que “[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. En virtud de dicho mandato, al interpretar un estatuto, debemos, de entrada, remitirnos al texto de la ley, pues cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda *477 intención legislativa. Véanse: Ortiz v. Municipio San Juan, 167 D.P.R. 609 (2006); Departamento Hacienda v. Telefónica, 164 D.P.R. 195 (2005); Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155 (2000); Rodríguez v. Méndez & Co., 147 D.P.R. 734 (1999); Rojas v. Méndez & Co., Inc., 115 D.P.R. 50 (1984). Debido a ello, “cuando una ley es clara y no es ambigua no hay necesidad de mirar más allá de la letra en búsqueda de la intención legislativa”. (Enfasis suplido.) Departamento Hacienda v. Telefónica, ante, pág. 215. Véase, además, Rosario v. Dist. Kikuet, Inc., 151 D.P.R. 634 (2000). Debemos descubrir y darle efecto a la intención expresada mediante la letra de la ley.
En el cumplimiento de esta función, “[rjesulta necesario que en la interpretación [se armonicen], hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa”. (Énfasis suplido.) Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005). Las disposiciones de una ley no deben ser interpretadas de manera aislada, sino analizadas en conjunto, tomando en consideración integralmente todo su contexto. Véase Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873 (1996). A la luz de las reglas de hermenéutica legal antes esbozadas, pasamos a resolver la controversia en cuestión.
Los peticionarios aducen, en síntesis, que el texto de la Ley de Justicia Contributiva de 2006 es por demás ambiguo, razón por la cual nos remiten al historial legislativo en busca de la “intención legislativa”. A esos efectos, sostienen que mediante dicha ley el legislador tuvo la intención de establecer un impuesto a la venta con una tasa única de 5.5%, distribuido en un 4% correspondiente al impuesto estatal y otro 1.5% correspondiente al impuesto municipal. No les asiste la razón. De un análisis ponderado de la pieza legislativa en cuestión surge que la intención legislativa, según ésta se encuentra expresada en el texto *478 claro de la ley, es la imposición de un impuesto sobre las ventas y el uso a una tasa contributiva total máxima de 7%. Veamos.
La Ley de Justicia Contributiva de 2006 regula el impuesto estatal y el impuesto municipal mediante artículos independientes. En la See. 2410 establece un impuesto sobre las ventas y el uso a una tasa contributiva base de un 5.5%. Los fondos que se obtengan por el pago de dicho 5.5% pertenecen al Estado Libre Asociado, en virtud de lo dispuesto en la Sec. 2405(c) del estatuto.(12) En la See. 6189 se autoriza a los municipios a imponer un impuesto a una tasa contributiva de 1.5%, cuyos recaudos, por mandato de la Sec. 6189(A), corresponden a los municipios.(13)
A su vez, en la See. 2406, la cual forma parte del Subtítulo BB —sobre el impuesto a las ventas y al uso— se exime al comerciante, en casos en que sea impráctico, de exponer por separado el precio de la venta y el impuesto total cobrado en el recibo, factura o documento similar. A esos efectos y para poder eventualmente calcular la suma correspondiente al impuesto total cobrado, el inciso (b) de dicha sección dispone que: "... los impuestos a ser pagados sobre partidas tributables serán calculados restando del total de las ventas brutas para el período de reporte aplicable, el total de las ventas tributables para el mismo periodo. Las ventas tributables se determinarán dividiendo las ventas brutas entre uno punto cero siete (1.07).” (Enfasis suplido.) Según se colige del texto, en la ecuación a realizarse debe utilizarse como variable 1.07, la cual en estricta matemática corresponde a una tasa contributiva total de *479 7%, situación o posición que, como veremos más adelante, es aceptada por los demandantes y peticionarios.
Armonizadas las disposiciones antes expuestas, resulta totalmente incompatible con el texto claro de la Ley Núm. 117 entender, según aducen los demandantes y peticionarios, que el 1.5% correspondiente al impuesto municipal se encuentra comprendido dentro del 5.5% establecido en la See. 2410. Por mandato expreso de la Sec. 2405(c), los recaudos obtenidos en pago del 5.5% pertenecen, en su totalidad, al Estado Libre Asociado. Por lo tanto, incluir el 1.5% de la See. 6189 dentro del 5.5% de la See. 2410, tendría el efecto de negarles a los municipios el derecho a utilizar los fondos que la propia Ley Núm. 117 les reconoce en la Sec. 6189(A).
Sabido es que los municipios poseen una personalidad jurídica propia e independiente a la del Estado Libre Asociado de Puerto Rico, por lo cual, bajo ninguna regla de hermenéutica legal aplicable, podemos concluir que el legislador, al destinar los recaudos del 5.5% al Estado Libre Asociado, incluyó a los municipios dentro de dicho mandato. Ello sería darle un significado diferente a las palabras utilizadas por el legislador.
La única interpretación integrada, lógica y razonable de la Ley Núm. 117 es la imposición de un impuesto estatal a una tasa contributiva base de 5.5%, a la cual debe sumarse una tasa contributiva, separada e independiente, de 1.5% correspondiente al impuesto municipal, para una tasa contributiva total máxima de 7%.
Dicha interpretación es correcta en estricto derecho, pues sabido es que las disposiciones de una ley no deben ser interpretadas de manera aislada, sino analizadas en conjunto, tomando en consideración integralmente todo su contexto. El texto de la citada Ley Núm. 117 es claro, por lo cual decretamos la validez de la intención que surge de éste, sin necesidad de ir más allá de la letra de la ley. Véanse: *480 Departamento Hacienda v. Telefónica, ante; Rosario v. Dist. Kikuet, Inc., ante.
Incluso, la propia Cámara de Representantes reconoció, indirectamente, la interpretación aquí decretada. Recordaremos que, luego de aprobado el Proyecto Sustitutivo, la Cámara de Representantes, en un intento de reconsiderar y enmendar el texto aprobado por ambos cuerpos legislativos, propuso añadir en el cuerpo de la Ley Núm. 117 que el 5.5% comprende una tasa contributiva única y total (4% para el Estado y 1.5% para los Municipios) y eliminar de la Sec. 2406(b) el 1.07 y sustituirlo por 1.055. Ese intento no es más que un acto afirmativo de reconocimiento de que la Ley Núm. 117, según aprobada, impone mediante su texto una tasa contributiva total máxima de 7%.
Ahora bien, aun cuando los peticionarios aceptan que la Sec. 2406(b) —referente a la ecuación del 1.07— hace referencia a la tasa contributiva del 7%, alegan que ésta proviene del proyecto original y que dicha sección se mantuvo por error en el Proyecto Sustitutivo aprobado. Aducen en apoyo a su señalamiento que en el Reglamento Núm. 7230, ante, mediante el artículo correspondiente a la See. 2406(b), el Secretario de Hacienda utiliza como variable el 1.055. Entienden que ello refleja el error en la Sec. 2406(b).
No les asiste la razón. En primer lugar, se sabe que al interpretar el texto de una ley no debemos acudir a las razones intrínsecas que motivaron a que éste se redactara en la forma en que lo fue. Nuestra función se limita al texto claro de la ley.
De otra parte, de un análisis integrado y armonioso de las disposiciones señaladas, entendemos que la referencia al 7% en la mencionada sección no corresponde a un mero error u omisión. Ello en vista de que, mientras en la Ley de Justicia Contributiva de 2006 el legislador reguló tanto el impuesto estatal como municipal, en el Reglamento Núm. 7230, ante, el Secretario de Hacienda se limitó a regular el impuesto estatal, por lo cual resulta razonable que en la ley *481 la ecuación se hiciese a base de un 7%, pues corresponde a la suma de ambas tasas contributivas reguladas en dicha pieza.
Por el contrario, debido a que las disposiciones del Reglamento Núm. 7230, ante, se limitan a regular el impuesto estatal, resulta razonable que en dicho reglamento el Secretario de Hacienda se limitara a incluir la variable correspondiente a la tasa contributiva del impuesto estatal, entiéndase, 5.5%. El propio reglamento exceptúa el impuesto municipal de dicha ecuación y les impone a los comerciantes la responsabilidad de cumplir con el pago de los impuestos pertenecientes a los municipios.(14)
En fin, del texto de la ley —el cual resulta ser la máxima expresión de la intención legislativa— surge claramente que se estableció una tasa contributiva máxima total de 7%, 5.5% correspondiente al impuesto estatal y un 1.5% correspondiente al impuesto municipal.(15)
*482 III
En mérito de lo antes expuesto, resolvemos que la Ley de Justicia Contributiva de 2006 establece un impuesto sobre las ventas y el uso a una tasa contributiva total máxima de 7%: 5.5% correspondiente al impuesto estatal y 1.5% correspondiente al impuesto municipal.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. El Juez Asociado Señor Rivera Pérez emitió una opinión disidente. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente.
Opinión de conformidad emitida por el
Juez Asociado Señor Fuster Berlingeri.
Estoy conforme con la opinión emitida por la mayoría del Tribunal en el caso de autos. Comparto plenamente lo que allí se dispone y los fundamentos en que se apoya el dictamen mayoritario. No obstante, deseo hacer hincapié brevemente en dos aspectos del asunto ante nuestra *483 consideración. La controversia que aquí nos concierne sólo este Tribunal puede resolverla con finalidad y, por su importancia, es menester que no quede duda alguna sobre los sólidos fundamentos de lo que hoy dictaminamos.
En primer lugar, debe quedar claro que lo dispuesto en el Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 14, no es meramente una norma de nuestro propio sistema legal, sino que es también un principio general de derecho. La norma que establece ese artículo, de que si el texto de una ley es claro, la letra de ésta no puede ser menospreciada por una supuesta intención legislativa contraria a la letra, ha sido reconocida reiteradamente en la jurisdicción federal, incluso por el propio Tribunal Supremo de Estado Unidos. El más alto foro judicial norteamericano lo ha señalado así:
“We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: ‘judicial inquiry is complete’.” Barhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 461-462 (2002). Véanse, además: Oncale v. Sun-downer Offshore Servs., 523 U.S. 75, 79 (1998); Ratzlaf v. United States, 510 U.S. 135, 147-148 (1994); United States v. Missouri Pacific R. Co., 278 U.S. 269, 278 (1929); Recording Industry of America v. Verizon Internet, 351 F.3d 1229, 1237 (D.C. Cir. 2003); Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 931 (7mo Cir. 1996); Eagle-Picher Industries v. United States E.P.A., 759 F.2d 922, 929 (1985).
Una reconocida autoridad en estos asuntos ha expresado el aludido principio general de derecho palmariamente:
Where the terms of a statute are clear ..., the legislative intent must be derived from it, even if the intent expressed conflicts with the purpose of the statute as set forth in committee reports. N.J. Singer, 2A Sutherland, Statutes and Statutory Construction Sec. 48.6, págs. 439 y 442-443 (2000).
No puede haber duda, pues, que el propio texto de la ley, cuando éste es claro, constituye la expresión definitiva de *484 la intención que finalmente tuvo el legislador. No puede invocarse otra supuesta intención legislativa para menoscabar lo que la ley en sí literalmente dispone de manera clara.
I
Lo otro que se debe enfatizar, en cuanto a la cuestión concreta que nos concierne en el caso de autos, es que el lenguaje de la ley es claro. Por un lado, se establece un impuesto estatal de 5.5% y por otro se faculta a los municipios a establecer un impuesto separado de 1.5%. No hay base alguna en el texto del estatuto para una interpretación distinta sobre estos extremos. De hecho, el 4% de impuesto estatal invocado por las partes peticionarias no se menciona en ningún lado de la ley, ni siquiera indirectamente. Sencillamente, no hay referencia alguna a un supuesto impuesto estatal de 4% en la ley en cuestión.
Es por todo lo anterior que debemos coincidir aquí con lo expresado por un alto foro judicial federal, de manera pertinente:
It is elementary in the law of statutory construction that, absent ambiguity or an absurd or unreasonable result, the literal language of a statute controls and resort to legislative history is not only unnecessary but improper. Montgomery Charter Serv. Inc. v. Washington Met. A.T. Com’n, 325 F.2d 230, 233 (D.C. Cir. 1963).

 Según surge de la demanda presentada en el caso de epígrafe, la Comisión de Hacienda y Asuntos Financieros de la Cámara de Representantes (Comisión) celebró sobre 47 vistas públicas y ejecutivas entre el 3 de diciembre de 2005 y el 24 de mayo de 2006.

 Ley Núm. 117 de 4 de julio de 2006.

 Previo a su aprobación, algunas porciones del Proyecto fueron enmendadas en el Hemiciclo. Estas enmiendas en nada afectaron las disposiciones aquí en cuestión y previamente transcritas.

 Dicha aprobación se emitió sin el previo informe de la Comisión de Hacienda del Senado y sin la celebración de un debate entre los miembros de dicho cuerpo.

 Véase R. de la C. 5269 del 27 de junio de 2006 y R. Cone, de la C. 81, las cuales se emitieron con el objetivo de “reafirmar el propósito y la realidad legislativa del Sustitutivo del Proyecto de la Cámara 2193, mejor conocido como ‘Ley de Justicia Contributiva de 2006’, para evitar posibles mal interpretaciones al mismo; ratificar el establecimiento de un impuesto a la venta con una tasa única de cinco punto cinco por ciento (5.5%), distribuido en cuatro por ciento (4%) correspondiente al impuesto estatal y otro uno punto cinco por ciento (1.5%) correspondiente al impuesto municipal”. Apéndice, págs. 960 y 962.

 Previo a la firma del Gobernador, la Cámara de Representantes aprobó un documento titulado Sustitutivo al Proyecto Cameral 2193 de Reforma Contributiva, con el objetivo de reconsiderar y enmendar ciertas disposiciones del Proyecto Sustitutivo dirigidas a establecer el monto de la tasa contributiva. Una notificación al respecto fue remitida al Senado, pero este cuerpo rehusó considerarla y se negó a devolver el proyecto a la Cámara de Representantes para su reconsideración. Ante *468 las diferencias ocurridas entre ambos cuerpos legislativos, incluyendo la negativa de remitirle al Gobernador el proyecto aprobado para su correspondiente consideración y firma, el Gobernador y el Hon. José Luis Dalmau Santiago acudieron ante este Tribunal mediante un recurso de mandamus. Expedimos el auto de mandamus y ordenamos la remisión del Proyecto Sustitutivo al Gobernador, según éste fue aprobado por la Cámara de Representantes y el Senado el 21 y 25 de junio de 2006, respectivamente. Acevedo Vilá v. Aponte Hernández, 168 D.P.R. 443 (2006).

 Véase Reglamento para Implantar las Disposiciones del Subtítulo BB — Impuesto sobre Ventas y Uso de la Ley Núm. 120 de 31 de octubre de 1994, Reglamento Núm. 7230, Departamento de Estado, 13 de octubre de 2006.

 Solicitaron además la expedición, en su momento, de cualquier remedio provisional o permanente, con el objetivo de ordenarle a los demandados imponer un impuesto sobre ventas y uso a una tasa contributiva total y única de 5.5%.

 Posteriormente, le concedimos el mismo término a la Cámara de Representantes y al Senado de Puerto Rico para que expresaran sus respectivas posiciones.

 Algunos de los demandantes impugnan la pieza legislativa en controversia en calidad, de pensionados afectados. Aducen que la tasa contributiva que la Rama Ejecutiva pretende imponer afecta sus respectivas finanzas personales y el poder adquisitivo de sus pensiones. A base de la doctrina previamente esbozada, entendemos que éstos no poseen legitimación activa por la mera condición de pensionados afectados. El daño alegado es un daño generalizado, compartido con la ciudadanía en general, pues igual que a los pensionados, los asalariados verán afectadas sus respectivas finanzas y el poder adquisitivo de sus salarios.

 Resulta pertinente señalar que ni la referida Ley Núm. 117 ni el Reglamento Núm. 7230 del Departamento de Hacienda de 13 de octubre de 2006, proveen un remedio en ley para la impugnación de la contribución impuesta o el reembolso del pago hecho en exceso a la tasa contributiva establecida en el estatuto.

 Sec. 2405(c): "... Los impuestos que se fijan por este Subtítulo advendrán fondos del Estado Libre Asociado al momento de cobrarse.”

 Sec. 6189(A): “La tasa del impuesto municipal de uno punto cinco por ciento (1.5%) se distribuirá en forma proporcional de la siguiente manera: i. una tasa de uno punto dos por ciento (1.2%) para el municipio; ii. una tasa de punto uno por ciento (.1%) para el Fondo de Mejoras Municipales; iii. una tasa de punto dos por ciento (.2%) como una aportación Municipal al Fondo General para alivios contributivos a individuos ...” (Énfasis suplido.) Apéndice, pág. 602.

 Art. 2406-l(b): “Excepto en el caso de pagos de impuestos relacionados a ventas realizadas en municipios para los cuales el Departamento actúe como cobrador y administrador centralizado, las ventas tributables se determinarán dividiendo las ventas brutas entre 1.055, quedando como responsabilidad del comerciante u operador de la máquina dispensadora el cumplimiento con su obligación, si alguna, de pago a un municipio.” Apéndice, pág. 112.

 Aunque lo previamente expresado dispone de la presente controversia, resulta pertinente señalar que un estudio de la Exposición de Motivos de la Ley de la Justicia Contributiva de 2006 confirma la determinación a la que hemos llegado. Mediante ésta el legislador nos remite a los sistemas tributarios de distintas jurisdicciones de Estados Unidos, especialmente, al sistema tributario de la Florida. A esos efectos, el legislador expresó:
“En el análisis de esta medida se consideraron los sistemas tributarios de varios estados, entre ellos, Hawaii, Nueva York y Florida. Mayormente, nuestro IVU ha seguido el modelo del impuesto sobre ventas y uso de la Florida por las siguientes razones: (i) es ampliamente conocido que por muchos años los puertorriqueños han visitado y vacacionado en el Estado de la Florida, por lo cual han experimentado el IVU fijado por la Florida; (ii) en años recientes, un número considerable de puertorriqueños se han establecido en dicho estado pero mantienen vínculos estrechos con Puerto Rico y viajan frecuentemente a la Isla y pueden compartir su experiencia con el IVU impuesto en Florida; y (iii) la experiencia positiva de Florida con su sistema de IVU ha permitido que no se le impongan a los individuos contribución sobre sus ingresos, logrando a su vez altos recaudos para el erario público.” Apéndice, pág. 794.
La ley contributiva del estado de Florida, muy similar a la Ley de Justicia Contributiva de 2006, establece un impuesto sobre las ventas y el uso mediante dos tasas contributivas separadas e independientes, una correspondiente al estado y otra correspondiente a los municipios o “counties”', al igual que en nuestra ley contributiva, se regulan ambas tasas mediante artículos independientes. Mientras que en su *482 Sec. 212.05 establece un impuesto sobre las ventas y el uso a una tasa contributiva base de 6%, en las Sees. 212.054 y 212.055 autoriza a los municipios o “counties” a establecer un impuesto a una tasa contributiva de hasta un 1.5%.
A pesar de estar regulada mediante la misma pieza legislativa, la tasa contributiva municipal es independiente y separada de la tasa contributiva base de 6% y no se entiende comprendida dentro del 6%. “Florida has a base tax rate of 6%. Local taxes are in addition to this base rate.” State of Florida Department of Revenue, History of Local Sales Tax and Current Rates, 2006, http://taxlaw.state.fl.us./ wordfiles/SUTTRCñISTORY.pdf. Igual estructura e interpretación recibe el estatuto contributivo del estado de Nueva York. Véanse los Arts. 28 y 29 del Tax Law del Estado de Nueva Cork, Sees. 1101-1264.
Al utilizar como modelo los sistemas tributarios antes descritos y, al igual que éstos, establecer un impuesto estatal y municipal mediante artículos independientes, la única interpretación lógica y razonable del texto de la Ley Núm. 117 es que nuestro legislador tuvo la intención de establecer un impuesto sobre las ventas y el uso mediante dos tasas contributivas separadas y distintas, y que la tasa correspondiente al impuesto municipal no se encuentra comprendida en el 5.5% establecido en laSec. 2401 de dicha ley.